## MARTIN DERRANE *v.* CITY OF HARTFORD ET AL.
### (SC 18340)

Rogers, C. J., and Norcott, Katz, Palmer, Zarella and McLachlan, Js.

Argued December 3, 2009—officially released March 2, 2010

*Richard S. Bartlett,* for the appellant (named defendant).

*Frank A. May,* with whom was *Matthew S. Necci,* for the appellee (defendant town of West Hartford).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether General Statutes § 7-433d[1] relieves a municipality from liability for a workers' compensation claim made by one of its employees, a paid firefighter, who was injured during the course of his employment while fighting a fire, pursuant to a request for mutual aid assistance, in a neighboring municipality. The named defendant, the city of Hartford (Hartford), appeals[2] from the decision of the workers' compensation review board (board), reversing the decision of the workers' compensation commissioner for the sixth district (commissioner) that had ordered the defendant town of West Hartford (West Hartford) to assume liability under § 7-433d for the workers' compensation claim of the plaintiff, Martin Derrane, a Hartford firefighter, and to reimburse Hartford for indemnity and medical benefits that it already

[1] General Statutes § 7-433d provides in relevant part: "Any uniformed member of a paid fire department who offers his services to an officer or person in charge of another fire company which is actively engaged in fire duties, and whose services are accepted by such officer or person, shall be entitled to receive [workers' compensation] benefits under chapter 568 . . . in the event of his injury or death arising out of such services, as if he were a member of the fire department of such municipality."

[2] Hartford appealed from the decision of the workers' compensation review board to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

had paid to the plaintiff. On appeal, Hartford claims that the board improperly concluded that the plaintiff had not offered "his services" to the West Hartford fire department within the meaning of § 7-433d and, therefore, that West Hartford could not be held liable under that statute for the workers' compensation benefits that Hartford had paid to the plaintiff. We disagree with Hartford and, therefore, affirm the board's decision.

The record reveals the following undisputed facts, as found by the commissioner, and procedural history. On May 17, 2004, a structure fire occurred at The Mews, an apartment and condominium complex located at 38–42 North Main Street in West Hartford. The West Hartford fire department responded to the call, commanded by John Oates, one of its battalion chiefs. Because of the magnitude of the fire, Oates requested assistance from Hartford's fire department pursuant to an oral mutual aid agreement then in effect between the municipalities, whereby either municipality could call on the other to aid it in fighting a major fire.[3]

Hartford responded to West Hartford's request for mutual aid by sending numerous fire companies to the scene, including the ladder company to which the plaintiff was regularly assigned. These firefighters, including the plaintiff, responded in uniform with their truck and fire equipment, led by Ian Tenney, charge officer on that day. As charge officer, Tenney was the liaison between his crew and Oates. Upon arriving at the scene, Tenney approached Oates and offered the services of his crew. Oates gave instructions exclusively to Tenney who, in turn, directed his crew, including the plaintiff.

___

[3] During deposition testimony given in this matter, Oates explained: "That's the concept of how we provide mutual aid to other departments. We routinely respond to other communities when their emergencies outstrip their resources and they need us to assist them and, on occasion, we have other communities respond to help us when our problems outstrip our resources."

The plaintiff himself did not have any direct communication with Oates or any of the other West Hartford fire officers at the scene.

During the course of fighting the fire, the plaintiff sustained injuries to his right hand when he jammed it on a rafter. After the fire, the plaintiff returned to his Hartford firehouse, reported his injury to his supervisor, and completed an accident report. The plaintiff then filed notice of a workers' compensation claim against Hartford. The plaintiff did not report his injury to, nor did he file a notice of claim against, West Hartford. Subsequently, Hartford paid the plaintiff all lost time and medical benefits afforded by the Workers' Compensation Act (act), General Statutes § 31-275 et seq., without prejudice.

Hartford, in turn, filed a claim with the workers' compensation commission, seeking reimbursement pursuant to § 7-433d from West Hartford for Hartford's payment to the plaintiff. In a finding and award dated September 24, 2007, the commissioner found that, pursuant to § 7-433d, West Hartford was responsible for the plaintiff's claim because the plaintiff had offered his services to West Hartford which, in turn, had accepted these services. The commissioner ordered West Hartford to reimburse Hartford for indemnity and medical benefits paid, as well as to assume liability for the remainder of the plaintiff's claim. West Hartford appealed from this decision to the board.

Thereafter, the board sustained West Hartford's appeal and reversed the decision of the commissioner. The board concluded that § 7-433d did not apply to the factual circumstances of the present case and that,

instead, General Statutes §§ 31-292[4] and 7-310[5] rendered Hartford fully liable for the plaintiff's claim. In concluding that § 7-433d did not apply, the board noted that it was not the plaintiff who had "[offered] his services" to West Hartford but, rather, Tenney—the plaintiff's superior—who had offered the services of the plaintiff. The board also relied on *Thomas* v. *Lisbon*, 209 Conn. 268, 271–72, 550 A.2d 894 (1988), wherein this court concluded that General Statutes § 7-322a[6]—a statute similar to § 7-433d, but applicable to volunteer firefighters rather than to paid firefighters—did not apply to a situation wherein volunteer firefighters from the town of Lisbon had been injured while fighting a fire pursuant to a mutual aid call in the city of Norwich, as those firefighters, similarly, had not personally offered their services to Norwich. Accordingly, the board concluded that West Hartford could not be held liable under § 7-433d for the workers' compensation benefits paid by Hartford to the plaintiff. This appeal followed. See footnote 2 of this opinion.

On appeal, Hartford claims that § 7-433d expressly applies to the factual circumstances in the present case, namely, when a paid firefighter is injured during a

---

[4] General Statutes § 31-292 provides: "When the services of a worker are temporarily lent or let on hire to another person by the person with whom the worker has entered into a contract of service, the latter shall, for the purposes of this chapter, be deemed to continue to be the employer of such worker while he is so lent or hired by another."

[5] General Statutes § 7-310 provides in relevant part: "Any officer or member of a fire department . . . while operating outside the jurisdictional limits of his fire department . . . in accord with such an agreement shall have the same rights, privileges and immunities that are granted him when operating within the jurisdictional limits of his fire department . . . ."

[6] General Statutes § 7-322a provides: "Any active member of a volunteer fire company who offers his services to an officer or person in charge of another fire company which is actively engaged in fire duties, and whose services are accepted by such officer or person, shall be entitled to receive all benefits payable under the provisions of sections 7-314 and 7-314a. Such payments shall be made by the municipality in which the fire company of which such fireman is a member is located."

mutual aid call. As for the requirement in § 7-433d that a firefighter "[offer] his services," Hartford posits that, to require each firefighter who responds to a call personally to offer his services would "render the statute unworkable" because, during a mutual aid call, the officer in charge always acts as a liaison between his or her crew and the command officer at the scene. Thus, Hartford contends, to interpret the offer requirement of § 7-433d literally, as the board did in the present case, would lead to a "bizarre application of the statute" whereby only a charge officer would be covered, and not his crew. Hartford also argues that *Thomas* v. *Lisbon*, supra, 209 Conn. 268, is distinguishable because in that case, unlike in the present case, there were no findings of offer and acceptance under § 7-433d. See id., 272. Finally, Hartford asserts that upholding the board's decision could chill the willingness of municipalities, particularly larger ones such as Hartford, to provide mutual aid assistance to other municipalities, as the former would remain responsible for the workers' compensation claims of their responding firefighters.

In response, West Hartford contends that the board properly concluded that § 7-433d did not apply to the factual circumstances in the present case, and that, instead, §§ 31-292 and 7-310, as well as General Statutes § 31-284,[7] governed. Specifically, citing the language of § 7-433d as well as its legislative history, West Hartford relies on the interpretation in *Thomas* v. *Lisbon*, supra, 209 Conn. 268, of § 7-322a, and claims that § 7-433d applies only to the good Samaritan situation where a firefighter, outside the course of his normal employment, comes upon a fire in a municipality other than

---

[7] General Statutes § 31-284 provides in relevant part: "(a) An employer . . . shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter . . . ."

his own and personally offers his services to that municipality's fire department. Accordingly, West Hartford disagrees with Hartford's argument that the board's interpretation of the offer requirement leads to a "bizarre application of the statute" whereby only a charge officer would be covered, and not his crew. We agree with West Hartford and conclude that, because § 7-433d does not apply to a paid firefighter's on-duty response to a mutual aid call in a neighboring municipality, Hartford, and not West Hartford, is responsible for the plaintiff's workers' compensation claim.

As a preliminary matter, we set forth the applicable standard of review. Hartford's claim challenging the board's interpretation of § 7-433d is a question of law. See, e.g., *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 371, 977 A.2d 650 (2009). "Cases that present pure questions of law . . . traditionally invoke a broader standard of review than ordinarily is involved in deciding whether, in light of the evidence, [an] agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that we will defer to an agency's interpretation of a statutory term only when that interpretation of the statute previously has been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation and is reasonable." (Citation omitted.) *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 446, 984 A.2d 748 (2010). Because the board's interpretation of § 7-433d previously has not "been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation"; id.; we exercise plenary review. See *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, supra, 371.

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When con-

struing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) Id., 371–72. "In seeking to determine that meaning . . . [General Statutes] § 1-2z[8] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 372.

In accordance with § 1-2z, we begin our analysis with the text of § 7-433d, which provides in relevant part: "Any uniformed member of a paid fire department who offers his services to an officer or person in charge of another fire company which is actively engaged in fire duties, and whose services are accepted by such officer or person, shall be entitled to receive [workers' compensation] benefits under [the act] . . . in the event of his injury or death arising out of such services, as if he were a member of the fire department of such munici-

---

[8] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

pality." The language of this provision contemplates a situation wherein an individual paid firefighter offers his personal services to another fire department, which subsequently accepts that offer of services. The statute is ambiguous, however, with respect to whether the requisite offer and acceptance may be made by and to the firefighter's superior, rather than the firefighter himself, as would occur during a mutual aid call such as the one in the present case. See, e.g., *Fairchild Heights, Inc.* v. *Amaro*, 293 Conn. 1, 9, 976 A.2d 668 (2009) ("[t]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation" [internal quotation marks omitted]).

A review of relevant statutory provisions of the act is instructive in answering this question. Section 31-284 (a) provides in relevant part that "an employer" must secure compensation for his employees for all personal injuries "arising out of and in the course of his employment . . . ." See also footnote 7 of this opinion. General Statutes § 31-275 (10) defines an " '[e]mployer' " in relevant part as "any person [or entity] . . . using the services of one or more employees for pay . . . ." Section 31-275 (9) (A) defines an " '[e]mployee' " in relevant part as "any person who . . . (i) [h]as entered into or works under any contract of service . . . with an employer . . . ." Further, the phrase "arising out of and in the course of his employment"; General Statutes § 31-284 (a); is defined by § 31-275 (1) as including, inter alia, "an . . . injury . . . to an employee . . . while the employee has been . . . *engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer* . . . ." (Emphasis added.) The language of § 31-284, thus, does not limit the liability of an employer on the basis of where an injury occurred, so long as the injury occurs while an employee is performing duties at the direction of his

employer. This is consistent with § 31-292, which provides that "[w]hen the services of a worker are temporarily lent or let on hire to another person by the person with whom the worker has entered into a contract of service, the latter shall, for purposes of [the act], be deemed to continue to be the employer of such worker while he is so lent or hired by another." Thus, the act generally renders employers responsible for injuries sustained by their employees, regardless of where those injuries occurred, whenever those employees are acting within the scope of their employment, even when such employees are temporarily lent to other entities. Furthermore, this general principle of an employer's coverage following an employee is consistent with § 7-310, which provides in relevant part: "Any officer or member of a fire department . . . while operating outside the jurisdictional limits of his fire department . . . in accord with [a mutual aid] agreement shall have the same rights, privileges and immunities that are granted him when operating within the jurisdictional limits of his fire department . . . ."

In the present case, pursuant to the mutual aid agreement between Hartford and West Hartford, the plaintiff was injured while working his regular shift, in a place he was ordered to be by his superiors, and while performing firefighting duties under their direction and command. Therefore, under § 31-284, the plaintiff was engaged in activity "arising out of and in the course of his employment" at the time of his injury, and his employer, Hartford, is liable for his workers' compensation benefits. Accordingly, as "statutes must be read not to conflict with each other, but, rather, to form a coherent scheme"; *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 16, 698 A.2d 795 (1997); it follows that the scope of § 7-433d, which was enacted more than twenty years after § 31-284 and did not repeal that provision, does

not include mutual aid requests, such as the request in the present case, which already were covered by other provisions of the act but, instead, is limited to those instances that fall outside of this coverage—good Samaritan situations, when an individual firefighter independently happens upon a fire in another jurisdiction, makes a personal offer to help, has that offer accepted and then is injured during the effort.[9]

The legislative history of § 7-433d supports this reading of the statute, as Senator Jay W. Jackson stated in his remarks in support of the bill: "The purpose of the amendment is to make clear that if a member of the paid [uniformed] fire department *volunteers his services* to a [f]ire [d]epartment in another municipality, such services are accepted by the other municipality and in the event of injury or death, the town that has accepted the services will be responsible to pay all benefits. . . . I believe [Public Acts 1971, No. 520] is a good bill which will take care of inequities in the past and one in particu-

---

[9] Hartford contends that this reading of § 7-433d renders it unworkable because paid firefighters leave their uniforms at their respective stations when not working. Accordingly, because the statute covers only "uniformed" members of paid fire departments, Hartford argues that it cannot include the good Samaritan firefighter who is not working and thus, not uniformed, and happens upon a fire in a municipality other than his own and offers his services. We disagree with this interpretation. Hartford's hypertechnical reading of the statute—that it requires the firefighter to be dressed in uniform when he offers his services—itself leads to an unworkable result, as it calls for the statute to protect those very firefighters who are already protected under the act and exclude those who are not covered by the act, namely, the good Samaritan firefighters who happen upon a fire outside of their jurisdiction and volunteer their services personally, outside the scope of their employment. Further, as West Hartford notes, Hartford's interpretation ignores the realistic possibility that a good Samaritan firefighter might well avail himself of extra protective gear available at the fire scene. Thus, as we explain in detail, Hartford's interpretation is surely not what the legislature intended when it enacted § 7-433d. Although the statute plainly requires the firefighter to be a member of a paid uniformed fire department, it does not require that firefighter to be dressed in his uniform at the time he happens upon the fire and offers his services.

lar that I am aware of where a member of a regular [f]ire [d]epartment volunteered his services in a small town, where his particular expertise was invaluable. However, he was injured and the question arose as to who should take care of his compensation payments." (Emphasis added.) 14 S. Proc., Pt. 6, 1971 Sess., p. 2563. Senator Jackson's comments confirm that the legislature's purpose in enacting § 7-433d was to provide protection for a paid firefighter injured while fighting a fire outside the scope of his employment and jurisdiction and, thus, who otherwise would be unprotected under §§ 31-284, 7-310, or any other statutory provision in existence at that time.

We also find persuasive *Thomas* v. *Lisbon*, supra, 209 Conn. 268, wherein this court addressed the issue of whether § 7-322a, a parallel statute to § 7-433d covering volunteer rather than paid firefighters;[10] see footnote 6 of this opinion; applied to Lisbon volunteer firefighters injured while responding to a mutual aid call in Norwich, pursuant to a mutual aid agreement between the municipalities. This court concluded that § 7-322a applies only in good Samaritan situations wherein an individual volunteer firefighter happens upon a fire in a municipality other than his own, offers his services to the fire department in that municipality, which thereafter accepts the offer of services, and is injured while fighting the fire. *Thomas* v. *Lisbon*, supra, 271. In contrast, this court emphasized that in mutual aid requests, it is the charge officer who offers the services of his crew, and that, therefore, it is the *municipality* offering the services of its firefighters, not an *individual* firefighter offering his own services as contemplated by § 7-322a. See id., 272 ("[The plaintiff volunteer firefighter]

---

[10] Section 7-322a differs, however, from § 7-433d in that, in a good Samaritan situation, § 7-322a requires coverage to be provided by the volunteer firefighter's *home* municipality, rather than the municipality receiving the firefighter's services. See footnote 6 of this opinion.

never offered his services to anyone. Since neither [volunteer firefighter] spoke with anyone from Norwich their services were, obviously, never accepted by Norwich, as required by the statute. . . . [W]hereas § 7-322a speaks to individuals, [General Statutes (Rev. to 1979)] § 7-314a[11] speaks to the conduct of towns. . . . The town of Lisbon's fire department responded to Norwich's call for help, it was not just the individual claimants who responded." [Citations omitted; internal quotation marks omitted.]). Thus, because § 7-322a did not apply, this court concluded that Norwich was responsible for the claims under § 7-314a.[12]

---

[11] General Statutes (Rev. to 1979) § 7-314a provided in relevant part: "(a) Active members of volunteer fire departments shall be construed to be employees of the municipality for the benefit of which volunteer fire services are rendered . . . ."

[12] The statute, therefore, allowed volunteer firefighters to receive workers' compensation benefits as if they were employees of the municipality that benefited from their services. In *Thomas*, this was Norwich, which was the department that had called for mutual aid.

The firefighting community subsequently objected to the result in *Thomas* and sought changes to § 7-314a. As Ed Fennelly, a fire chief representing the Connecticut Fire Chiefs' Association and the Connecticut State Firefighter's Association, testified during hearings before the labor and public employees joint standing committee, "when the Supreme Court made the [*Thomas*] decision and . . . put the burden onto Norwich that they'd have to pay [workers' compensation benefits] for an individual that is not within their [rolls], the word went out in that area of the state, to everybody, be very, very cautious and don't be calling mutual aid in as quickly as you have in the past and that's what our concern is, that a [f]ire [c]hief is now burdened with sitting back, watching a conflagration, trying to decide at what point is he going to call for help because he's got an additional liability coming in if these personnel are injured." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1989 Sess., p. 487. The legislature, therefore, enacted Public Acts 1989, No. 89-22, which amended § 7-314a to provide that "[a]ny member of a volunteer fire company or department . . . performing fire duties . . . pursuant to a mutual aid understanding between municipalities shall be entitled to all benefits pursuant to this section and shall be construed to be an employee of the municipality in which his fire company or department . . . is located." See General Statutes (Rev. to 1991) § 7-314a (e); see 32 S. Proc., Pt. 3, 1989 Sess., p. 915, remarks of Senator James H. Maloney ("what this bill does is make clear what was previously understood to be statutory law, that in a volunteer fireman's situation, such volunteers are covered for [w]orkers' [c]ompensation pur-

We believe that the reasoning in *Thomas* remains persuasive in the present case. Section 7-322a was enacted in 1965, while § 7-433d was passed in 1971 with the same triggering language. Senator Jackson's remarks, then, make it evident that, in enacting § 7-433d, the legislature had the same purpose in mind, namely, filling a gap by extending the good Samaritan protections to paid firefighters as it had done for volunteer firefighters in § 7-322a. Accordingly, just as § 7-322a "speaks to individuals"; *Thomas* v. *Lisbon*, supra, 209 Conn. 272; § 7-433d applies only to the individual paid firefighter who personally offers his services to a municipality other than his own.

We therefore conclude that § 7-433d does not apply to mutual aid requests handled by paid firefighters. Instead, pursuant to §§ 31-284 and 7-310, paid firefighters responding to a mutual aid call remain covered for workers' compensation benefits by their home municipality.[13] Consequently, the board properly determined that Hartford, and not West Hartford, was responsible for the plaintiff's workers' compensation claim.

poses by the town in which they are principally a volunteer"); 32 H.R. Proc., Pt. 5, 1989 Sess., p. 1614, remarks of Representative Joseph A. Adamo ("[i]t was the fear of the [Connecticut] Fire [Chiefs'] Association and the [f]ire [p]revention and [c]ontrol [c]ommission that [*Thomas*] and the way it was applied would have a hindering affect [on mutual aid agreements]").

[13] Hartford, conversely, contends that holding the responding municipality liable for workers' compensation claims occasioned by mutual aid requests could chill the willingness of municipalities, particularly larger ones like Hartford, to provide mutual aid assistance to other municipalities. We disagree with this contention. On the contrary, the legislature's response to *Thomas* v. *Lisbon*, supra, 209 Conn. 268; see footnote 12 of this opinion; demonstrates the firefighting community's long-standing expectation that coverage follows the firefighter who is acting within the scope of his employment, including in the mutual aid context. As Fire Chief Ed Fennelly noted; see footnote 12 of this opinion; "historically, and in the past it's always been the case that when a company is called or responding to a call for mutual aid, when they bring their personnel into the next town, that they assume the responsibility for [workers' compensation] coverage with the personnel they bring in." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1989 Sess., p. 484.

The decision of the workers' compensation review board is affirmed.

In this opinion the other justices concurred.