## GABRIELE NYENHUIS *v.* METROPOLITAN DISTRICT COMMISSION
### (SC 18590)

Rogers, C. J., and Norcott, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued December 8, 2010—officially released April 26, 2011

*David A. Ryan, Jr.*, for the appellant (defendant).

*Ralph W. Johnson III*, with whom was *Eric P. Daigle*, for the appellee (plaintiff).

*Michael A. Georgetti* filed a brief for the Hartford Police Union as amicus curiae.

*Opinion*

NORCOTT, J. This appeal presents several significant issues with respect to the application of General Statutes (Rev. to 2009) § 53-39a,[1] which "authorizes indem-

---

[1] General Statutes (Rev. to 2009) § 53-39a provides: "Whenever, in any prosecution of an officer of the Division of State Police within the Department of Public Safety, or a member of the Office of State Capitol Police or any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management, or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer

nification for economic loss, including legal fees, incurred by officers of local police departments who are prosecuted for crimes allegedly committed by them in the course of their duties when the charges against them are dismissed or they are found not guilty." *Cislo* v. *Shelton*, 240 Conn. 590, 598, 692 A.2d 1255 (1997). The defendant, the metropolitan district commission, appeals[2] from the judgment of the trial court awarding the plaintiff, Gabriele Nyenhuis, $73,072.50 in an indemnification action brought pursuant to ·§ 53-39a. On appeal, the defendant claims that the trial court improperly concluded that the plaintiff: (1) did not need to exhaust administrative remedies under the applicable collective bargaining agreement (agreement) before bringing this action; (2) was entitled to indemnification for economic loss starting on the date of the incident that led to the underlying criminal charges, rather than the date when she was arrested; and (3) was entitled to indemnification under § 53-39a for sick time, earned time and vacation time (collectively, leave time) that she used during the course of the prosecution, and lost overtime pay that she would have received but for the

found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred. Such officer may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section."

Section 53-39a was amended by Public Acts 2010, No. 10-68, effective October 1, 2010, which deleted the phrase "any legal fees necessarily incurred," and inserted language that such economic loss "includ[es] the payment of attorney's fees and costs incurred during the prosecution and the enforcement of this section." This amendment superseded our holding in *Link* v. *Shelton*, 186 Conn. 623, 632, 443 A.2d 902 (1982), wherein we concluded that § 53-39a did not provide for "recovery of attorney's fees sustained as a result of a separate action to enforce the right to indemnification under § 53-39a." Because this amendment is not relevant to the present case, all references to § 53-39a are to the 2009 revision unless otherwise noted.

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

prosecution. We conclude that the plaintiff was not required to exhaust her administrative remedies under the agreement and that she is entitled to indemnification for leave time used and overtime pay lost as a result of the prosecution. We also conclude that the plaintiff is entitled to indemnification under § 53-39a only for those economic losses, prearrest and postarrest, that have a clear nexus to the criminal prosecution, and, thus, we reject the trial court's conclusion that the plaintiff's right to indemnification accrued automatically on the day of the incident at issue. Accordingly, we reverse the judgment of the trial court in part and remand the case to that court for a new hearing in damages.

The record reveals the following relevant facts and procedural history. On April 19, 2006, the plaintiff, in the course of her employment as a uniformed police officer of the defendant, had an altercation with Stephen Atkins, a member of the public (Atkins incident). The following day, in response to a citizen complaint filed by Atkins, the defendant suspended the plaintiff's police powers and placed her on administrative duty. Sometime between April 20, 2006, and June 14, 2006, the West Hartford police department initiated an investigation into the matter and, on June 14, 2006, the West Hartford police arrested the plaintiff in relation to the Atkins incident and charged her with assault in the third degree in violation of General Statutes § 53a-61, reckless endangerment in the second degree in violation of General Statutes § 53a-64, and falsely reporting an incident in the second degree in violation of General Statutes § 53a-180c. On November 5, 2007, after a jury trial, the plaintiff was acquitted of all charges, and on November 8, 2007, the defendant restored the plaintiff from administrative duty to her previous status as a uniformed officer.

Subsequently, in November, 2007, the plaintiff initiated two complaints against the defendant pursuant

to the agreement's grievance procedure,[3] seeking: (1) "reinstatement in 'time bank' for vacation and earned time used between [April, 2006, through December, 2006]"; and (2) "to be made whole for loss of overtime dating from April 2006 to [November, 2007]." While the grievances were pending,[4] the plaintiff filed the present action pursuant to § 53-39a against the defendant seeking indemnification for, inter alia, lost overtime, seniority, sick time, vacation time and attorney's fees and costs.[5] After granting the plaintiff's unopposed motion for summary judgment relative to the defendant's liability under § 53-39a, the trial court held a hearing in damages.

Thereafter, the trial court issued a memorandum of decision that first rejected the defendant's claim that the court lacked subject matter jurisdiction because the plaintiff had not exhausted her administrative remedies, namely, the grievance procedure established pursuant to the agreement. See footnote 3 of this opinion. That court concluded that "the grievance procedure [was] futile or inadequate because under § 53-39a, a plaintiff police officer may seek damages for economic loss that

[3] Article 18 of the agreement, entitled "Grievance Procedure and Arbitration," provides in relevant part: "18.1 The purpose of this grievance procedure is to provide for the settlement of work related to problems at as low an administration level as possible. The [defendant] will encourage supervisors to attempt to resolve grievances with employee(s) involved and the [u]nion will encourage employees to attempt to resolve grievances with their immediate supervisors. Any unresolved dispute between an employee and/or the [u]nion and the [defendant] involving the interpretation or application of the terms of this agreement, shall be processed in accordance with the following procedure. The grievance may be discussed informally with the immediate supervisor by the grievant and/or the steward to see if the matter can be resolved."

[4] The defendant's director of human resources denied both of the plaintiff's grievances, and on or about February 10, 2009, the plaintiff withdrew both grievance complaints without seeking further review.

[5] In February of 2009, the parties entered into an agreement settling the dispute with respect to the attorney's fees incurred during the defense of the criminal charges.

are potentially greater than the relief available pursuant to a collective bargaining agreement" and, further, that, pursuant to General Statutes § 31-51bb,[6] the plaintiff was entitled to pursue the statutory remedy provided by § 53-39a. The trial court then concluded that, as a result of the criminal prosecution that followed the Atkins incident, the plaintiff "[was] entitled to be indemnified for economic loss sustained by her for a 'crime allegedly committed,' " including compensation for lost leave time and overtime. Finally, that court concluded that the plaintiff's economic losses should be calculated starting from the date of the Atkins incident, April 19, 2006, through the date the defendant reinstated the plaintiff to active duty, November 8, 2007. Accordingly, the trial court rendered judgment for the plaintiff against the defendant in the amount of $73,072.50.[7] This appeal followed.

On appeal, the defendant claims that the trial court improperly concluded that the plaintiff: (1) did not need to exhaust administrative remedies before filing this indemnification action; (2) had suffered economic loss under § 53-39a through lost leave time and overtime pay; and (3) was entitled to indemnification starting from the date of the Atkins incident that led to the underlying criminal charges. We address each claim in turn and set forth additional relevant facts where necessary in the context of each claim.

[6] General Statutes § 31-51bb provides: "No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement."

[7] The trial court's judgment reflects awards of $6537.85 for lost vacation time; $1148.15 for lost earned time; $5588.30 for lost sick time; and $59,798.20 for lost overtime pay.

## I

We first address the defendant's claim that the trial court improperly concluded that it had subject matter jurisdiction because the plaintiff was not required to exhaust her administrative remedies before bringing this action. Specifically, the defendant argues that § 31-51bb does not permit the plaintiff to pursue her claim in court before exhausting the grievance procedure provided for in the agreement because her claims "originate from and are dependent upon interpretation and analysis of the [agreement] . . . ." The defendant further argues that resort to the grievance procedure would not have been futile or inadequate for the plaintiff, and, therefore, that exception to the exhaustion rule does not apply. In response, the plaintiff argues that the trial court properly concluded that it had subject matter jurisdiction pursuant to both § 31-51bb and the futility exception to the exhaustion doctrine. We agree with the plaintiff and conclude that, because her claim was not dependent on a provision of the agreement, or a breach thereof, but, rather, had an independent statutory basis under § 53-39a, the trial court had subject matter jurisdiction over the action pursuant to § 31-51bb.

"As a preliminary matter, we set forth the applicable standard of review. . . . Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 250–51, 851 A.2d 1165 (2004).

Section 31-51bb provides in relevant part: "No employee shall be denied the right to pursue, in a court

of competent jurisdiction, a cause of action arising under . . . a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement." In *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 481, 628 A.2d 946 (1993), we reviewed the language and legislative history of § 31-51bb and concluded "that the legislature intended to . . . eliminate the requirement that a plaintiff who is subject to a collective bargaining agreement exhaust all grievance and arbitration procedures before pursuing any statutory remedies in the trial court." We further concluded that "an employee who does *not* exhaust the grievance procedures established in a collective bargaining agreement may pursue a cause of action in the Superior Court *if the cause of action is premised on an independent statutory claim* . . . [and that to] hold otherwise would be to deny such an employee the right to pursue a statutory cause of action solely because of the existence of a collective bargaining agreement." (Emphasis altered.) Id., 481–82.

In the present case, we conclude that § 31-51bb permitted the plaintiff to bring this action without first exhausting her administrative remedies under the agreement because the action is "premised on an independent statutory claim," namely, indemnification pursuant to § 53-39a. Indeed, that statutory claim is the only cause of action enumerated in the plaintiff's complaint, wherein she expressly requested indemnification "pursuant to . . . § 53-39a" and sought relief for economic losses, including attorney's fees and costs, incurred during her criminal prosecution. Moreover, to the extent the plaintiff seeks indemnification for leave time and

overtime pay, the loss of which was occasioned by the criminal prosecution, she invokes only § 53-39a as a basis for that relief. Finally, it is significant that § 53-39a expressly authorizes a police officer seeking indemnification to "bring an action in the Superior Court against [his or her] employing governmental unit to enforce the provisions of this section." General Statutes (Rev. to 2009) § 53-39a. Thus, § 53-39a operates as an independent statutory basis for the plaintiff's claim.

We disagree with the defendant's contention that the plaintiff's claims fall within the realm of those cases for which "the legislature intended to retain the exhaustion requirement," namely, when a party's "claim arises from a right dependent on the provisions of the collective bargaining agreement." *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 482 n.8. Claims arising from a "right established by the collective bargaining agreement," and thus subject to the exhaustion requirement, include wage and hour disputes; see id.; disputes over employer hiring decisions; see, e.g., *Saccardi* v. *Board of Education*, 45 Conn. App. 712, 716–18, 697 A.2d 716 (1997) (dispute over selection of high school athletic coach); and termination proceedings. See, e.g., *Arriola* v. *Board of Education*, Superior Court, judicial district of Windham at Putnam, Docket No. 062832 (January 22, 2002) (claim that school board failed to follow progressive discipline policy contained in collective bargaining agreement). In contrast, the cause of action at issue in the present case—indemnification for economic losses suffered as a result of an unwarranted criminal prosecution—is exclusively created by § 53-39a, which therefore provides "an independent statutory claim."[8] *Genovese* v. *Gallo Wine Merchants, Inc.*,

---

[8] We disagree with the defendant's reliance on the provisions of the agreement that control covered employees' hours of work, overtime, sick leave, earned time and vacation time. The defendant's argument sweeps too broadly. The plaintiff's entitlement to indemnification does not arise from the terms of the agreement but, rather, from the cause of action expressly authorized by § 53-39a, which is not limited in application only to officers

supra, 481. Put differently, although the agreement is instructive as to the degree of the economic losses suffered by the plaintiff, her indemnification claim is not rooted in its terms but, rather, is authorized statutorily by § 53-39a. Accordingly, pursuant to § 31-51bb, the plaintiff was not required to exhaust the administrative remedies provided for in the agreement before bringing this action.[9]

## II

We next address the defendant's claim that the trial court improperly concluded that the plaintiff was entitled to indemnification pursuant to § 53-39a for economic losses incurred starting from the date of the Atkins incident. Specifically, the defendant argues that the plaintiff was "not entitled to economic losses occurring prior to the date of her arrest," because the term " 'such prosecution' " in § 53-39a limits the plaintiff's potential recovery to economic losses sustained only "after a criminal charge or arrest has occurred." The defendant posits that indemnification for any economic losses sustained prior to arrest may be recovered

not subject to collective bargaining agreements. Thus, the plaintiff's claims are not "dependent on the provisions of the collective bargaining agreement." *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 482 n.8; cf. *Lingle* v. *Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988) (retaliatory discharge claim by worker covered by union contract was "purely factual inquiry [that did] not turn on the meaning of any provision of a collective-bargaining agreement" and thus was not preempted by § 301 of Labor Management Relations Act, 29 U.S.C. § 141 et seq.); *Baldracchi* v. *Pratt & Whitney Aircraft Division*, 814 F.2d 102, 106 (2d Cir. 1987), cert. denied, 486 U.S. 1054, 108 S. Ct. 2819, 100 L. Ed. 2d 920 (1988) (potential determination of damages in wrongful discharge action did not "substantial[ly] [depend] on the labor agreement" because "not every question tangentially involving a provision of a collective-bargaining [agreement] is preempted by § 301" of Labor Management Relations Act [internal quotation marks omitted]).

[9] Because we conclude that § 31-51bb permitted the plaintiff to bring this action, we need not address the parties' remaining arguments regarding the futility exception to the exhaustion doctrine.

only as provided by the terms of the agreement. In response, the plaintiff argues that the trial court properly interpreted § 53-39a to provide for recovery starting from the date of the incident that led to the criminal prosecution. The plaintiff asserts that a prosecution necessarily encompasses any criminal investigations that may occur before an arrest is made or a criminal charge is filed, meaning that, in the present case, she began to suffer economic losses beginning the day after the Atkins incident. We agree with the plaintiff in part and conclude that, under § 53-39a, a police officer is entitled to indemnification for prearrest economic losses that have a clear nexus to the criminal prosecution.

Whether § 53-39a allows a police officer to recover economic losses incurred prior to his or her arrest is a question of statutory interpretation, over which we exercise plenary review in accordance with well established principles set forth in General Statutes § 1-2z. See, e.g., *Derrane* v. *Hartford*, 295 Conn. 35, 42–43, 988 A.2d 297 (2010).

In accordance with § 1-2z, we begin with the text of General Statutes (Rev. to 2009) § 53-39a, which provides in relevant part: "Whenever, *in any prosecution* of an officer of . . . a local police department *for a crime allegedly committed by such officer* in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of *such prosecution,* including the payment of any legal fees necessarily incurred. Such officer may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section." (Emphasis added.)

Thus, resolution of the defendant's claim in this appeal depends on whether the term "prosecution," as

used in § 53-39a, is limited only to those events occurring subsequent to the officer's arrest. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 235, 983 A.2d 1 (2009). The dictionary defines prosecution as, inter alia, "the act or process of prosecuting; [specifically] the institution and continuance of a criminal suit involving the process of pursuing formal charges against an offender to final judgment . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 2001). Because the dictionary definition does not state conclusively when a prosecution begins, and indeed refers amorphously to the "process of pursuing formal charges against an offender," we conclude that both parties' interpretation of § 53-39a are reasonable and that, therefore, the statute is ambiguous with respect to the period of time for which a police officer may recover for economic losses.[10] See, e.g., *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 720, 6 A.3d 763 (2010). Accordingly, we may consider the relevant extratextual

---

[10] The ambiguity of § 53-39a on this point is further illustrated by the existence of other Superior Court decisions holding, in contrast to the trial court's decision in the present case, that § 53-39a does not provide for the indemnification of economic losses suffered before an officer's arrest. See *Walsh* v. *New Britain*, Superior Court, judicial district of Tolland at Rockville, Docket No. CV 09-4010883 (November 10, 2009); see also *Murtha* v. *Hartford*, Superior Court, judicial district of New Haven, Docket No. CV 07-501195-S (February 24, 2010) ("[a] prosecution begins with an arrest so the question becomes did the economic loss come about as a result of the arrest and ensuing prosecution").

sources to resolve this ambiguity. See General Statutes § 1-2z.

As the trial court noted, "[t]he legislative history of § 53-39a does not provide guidance as to the meaning of 'such prosecution,' as the enacting legislation, Public Acts 1973, No. 73-627, was a substitute bill passed [on the] consent calendar without debate." Notwithstanding the lack of legislative history on point, we previously have recognized that the legislature enacted § 53-39a "to permit police officers to recoup the necessary expenses that they have incurred in defending themselves against unwarranted criminal charges arising out of their conduct in the course of their employment." *Cislo* v. *Shelton*, supra, 240 Conn. 598. Thus, in considering when a prosecution begins, we find significant the undisputed proposition that even the investigative stages of a criminal prosecution may cause the subject to incur numerous kinds of economic loss, such as attorney's fees and time away from work. For example, a person subject to a routine police investigation may desire the assistance of an attorney, even before that person is arrested. See, e.g., *State* v. *Angel T.*, 292 Conn. 262, 265, 973 A.2d 1207 (2009) (noting involvement of defendant's attorney during police investigation of sexual assault allegations when detective sought to interview defendant). Indeed, the fifth amendment to the United States constitution affords the subject of a police investigation the right to counsel even before the initiation of adversarial criminal proceedings, so long as that person is in custody and subject to police interrogation, regardless of whether a formal arrest has occurred. See id., 282–83; see also *In re Kevin K.*, 299 Conn. 107, 127, 7 A.3d 898 (2010) ("in determining whether *Miranda* rights are required, the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree *associated* with a formal arrest" [emphasis added]).

It also is significant that individuals may be compelled to attend and produce documents at the proceedings held before an investigatory grand jury; see General Statutes § 54-47b (3);[11] appointed following an application filed pursuant to General Statutes § 54-47c[12] by,

[11] General Statutes § 54-47b (3) provides: " 'Investigatory grand jury' means a judge, constitutional state referee or any three judges of the Superior Court, other than a judge designated by the Chief Justice to serve on the panel, appointed by the Chief Court Administrator to conduct an investigation into the commission of a crime or crimes."

[12] General Statutes § 54-47c provides in relevant part: "(a) Any judge of the Superior Court, Appellate Court or Supreme Court, the Chief State's Attorney or a state's attorney may make application to a panel of judges for an investigation into the commission of a crime or crimes whenever such applicant has reasonable belief that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed. . . .

"(c) If the application is made by the Chief State's Attorney or a state's attorney, it shall also include (1) a full and complete statement of the status of the investigation and of the evidence collected as of the date of such application, (2) if other normal investigative procedures have been tried with respect to the alleged crime, a full and complete statement specifying the other normal investigative procedures that have been tried and the reasons such procedures have failed or the specific nature of the alleged crime or the nature of the investigation that leads the applicant to reasonably conclude that the use of normal investigative procedures would not result in the obtaining of information that would advance the investigation or would fail to secure and preserve evidence or testimony that might otherwise be compromised, (3) if other normal investigative procedures have not been tried, a full and complete statement of the reasons such procedures reasonably appear to be unlikely to succeed if tried or be too dangerous to employ, and (4) a full and complete statement of the reasons for the applicant's belief that the appointment of an investigatory grand jury and the investigative procedures employed by such investigatory grand jury will lead to a finding of probable cause that a crime or crimes have been committed.

"(d) The panel may approve the application and order an investigation into the commission of a crime or crimes if it finds that (1) the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed, (2) if the application was made by the Chief State's Attorney or a state's attorney, other normal investigative procedures with respect to the alleged crime have been tried and have failed or reasonably appear to be unlikely to succeed if tried or be too dangerous to employ or, due to the specific nature of the alleged crime or the nature of the investigation, it is reasonable to conclude that the use of normal investigative procedures would not result

inter alia, a state's attorney. See General Statutes § 54-47f (b).[13] Because grand jury proceedings are held when "the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed"; General Statutes § 54-47c (a); they by their very nature occur before an arrest is ever made.[14] In addition to losing time away from work simply to appear before an investigatory grand jury, police officers who are the subject of such a proceeding may well incur significant legal fees as the result of aspects of that process. Indeed, the statutory scheme specifically contemplates that witnesses will need counsel during the grand jury proceedings. See General Statutes § 54-47f (d) (providing for witness' right to have counsel present at grand jury hearing); see also *In re Investigatory Grand Jury No. 2007-04*, 293 Conn. 464, 469, 977 A.2d 621 (2009) (noting that "several persons who were referred to in the [grand jury] final report and who had been deemed to be interested parties under [General Statutes] § 54-47g [c] requested *through their counsel* permission to view the

in the obtaining of information that would advance the investigation or would fail to secure and preserve evidence or testimony that might otherwise be compromised, and (3) the investigative procedures employed by an investigatory grand jury appear likely to succeed in determining whether or not there is probable cause to believe that a crime or crimes have been committed."

[13] General Statutes § 54-47f (b) provides: "The attendance of witnesses and the production of documents at such investigation may be compelled by subpoena, signed by any official authorized to issue such process."

[14] It also is significant that some of the witnesses compelled to testify before an investigatory grand jury may well eventually be arrested and become criminal defendants, thus providing a link between economic losses and expenses incurred during their appearance before the grand jury and their subsequent arrest and trial. See, e.g., *State* v. *Meehan*, 260 Conn. 372, 374–75, 796 A.2d 1191 (2002) (defendant testified before grand jury and was later arrested based, in part, on his testimony); *State* v. *Rivera*, 250 Conn. 188, 190–91, 736 A.2d 790 (1999) (prior to defendant's arrest, grand jury subpoenaed defendant to testify during investigation of possible illegal police officer conduct).

final report before arguing on the issue of whether the report should be sealed" [emphasis added]).

The costly financial implications of being subject to a criminal investigation, viewed in juxtaposition with the purpose of § 53-39a of making a police officer financially whole once he has been acquitted of a crime or the charges have been dismissed, leads us to conclude that the legislature intended § 53-39a to cover economic losses incurred prior to an arrest. Nevertheless, we recognize that we must strictly construe § 53-39a because it is a statute that abrogates or modifies governmental immunity. *Cislo* v. *Shelton*, supra, 240 Conn. 598. Accordingly, we also conclude that the employer's prearrest liability under § 53-39a attaches only when there is a clear nexus between the economic losses and the prosecution, and that the statute only provides for indemnification for those prearrest economic losses that are: (1) incurred by the police officer as a result of an unwarranted police investigation or criminal prosecution, or in anticipation of an unwarranted police investigation or criminal prosecution that actually occurs; or (2) precipitated by the employer's adverse action against the officer, taken in response to that employer's discovery of a police investigation or criminal prosecution.[15] This limitation recognizes that an officer may suffer prearrest economic losses that cannot be linked to actual criminal court proceedings but still provides that officer with a vehicle for recovering the potentially substantial financial losses incurred because of an initial police investigation that ultimately leads to an arrest and criminal prosecution.[16]

---

[15] This case-by-case analysis acknowledges that there are two types of economic losses that the plaintiff may suffer: those that she incurs herself, such as attorney's fees and lost leave time, and those that her employer causes directly, such as suspension or reduction in pay, and loss of opportunity for overtime.

[16] We note that, for any plaintiff to recover prearrest economic losses under § 53-39a, all other elements of that statute must still be satisfied, including the requirement that a criminal prosecution actually occur. In

Thus, the trial court properly determined that the plaintiff was entitled to recover economic losses sustained as a result of the criminal prosecution and incurred prior to her arrest. We disagree, however, with the trial court's conclusion that, as a matter of law, the plaintiff is entitled to recover such losses from the date of the incident that led to the police investigation and criminal prosecution. The critical findings for the purposes of, first, establishing a nexus between the criminal prosecution and the prearrest economic loss and, second, calculating damages, are whether the employee incurred economic losses because of an expectation or actual experience of a police investigation or criminal prosecution, or whether the employer precipitated economic losses in response to a police investigation or criminal prosecution. Although we conclude in part III of this opinion that the trial court's findings that the criminal prosecution caused the plaintiff's lost leave time were not clearly erroneous, we also conclude that the trial court did not make a specific finding as to whether the defendant placed the plaintiff on administrative duty because of the police investigation, thus establishing a clear nexus between her loss of overtime pay and the criminal prosecution. Accordingly, we conclude that a remand to the trial court is necessary for a new hearing in damages for a finding of causation relative to the plaintiff's placement on administrative duty, and a new determination of damages in accordance with that finding.

### III

Although a new damages hearing is required, we address the defendant's claim that the trial court

those circumstances when an officer may have sustained economic losses in anticipation of a police investigation, such as when that officer consults with an attorney, there must still be a criminal prosecution that actually occurs and results in an acquittal or dismissal, for indemnification pursuant to § 53-39a.

improperly concluded that the plaintiff was entitled to indemnification under § 53-39a for economic losses sustained as a result of lost leave time and overtime pay, because this issue is likely to arise again on remand. Specifically, the defendant argues that economic loss under § 53-39a does not include lost leave time and, further, if it does, that the trial court's findings that the plaintiff had proved that the criminal prosecution caused her economic losses were clearly erroneous. The defendant also contends that the plaintiff did not prove that any lost overtime pay was caused by the criminal prosecution, and, even if she did, she did not establish that she was entitled to overtime pay or meet her burden of proving the amount of overtime she was due. The plaintiff responds that lost leave time qualifies as economic loss under § 53-39a, and that, through her testimony at trial, she met her burden of proving that the lost leave time was a result of the criminal prosecution. The plaintiff also contends that, as a direct result of being placed on administrative duty, she lost overtime pay that she otherwise would have received and, further, that the evidence at trial established the amount of overtime she was owed. We agree in part with the plaintiff.[17]

---

[17] The plaintiff argues that we should not consider the defendant's claims that the plaintiff did not suffer economic loss through lost leave time and overtime pay. The plaintiff contends that these arguments pertain to the defendant's liability and were waived when the defendant failed to oppose the plaintiff's motion for summary judgment, thus precluding the defendant from raising them on appeal. We disagree.

"[A]ny person who invokes § 53-39a must sustain a twofold burden of proof. In order to receive indemnity, a police officer must prove not only that the charges against him were dismissed, or that he was acquitted, but also that the charges arose 'in the course of his duty' as a policeman." *Rawling* v. *New Haven*, 206 Conn. 100, 106, 537 A.2d 439 (1988). Here, the defendant's arguments concerning economic loss do not relate to its liability under § 53-39a but, rather, to the measure of damages due to the plaintiff. Accordingly, we consider the merits of the defendant's arguments in this appeal.

## A

As an initial matter, we first address the defendant's claim that the term "economic loss," as used in § 53-39a, does not include lost leave time. Although the defendant's argument relies solely on distinguishing the present case from two other Superior Court cases cited by the trial court,[18] we note that this question is one of statutory construction, over which we exercise plenary review in applying the previously described principles of statutory interpretation under § 1-2z. *Derrane* v. *Hartford*, supra, 295 Conn. 42–43. We conclude that economic loss includes the financial burdens sustained by the plaintiff.

The language of the statute again guides our initial analysis. General Statutes (Rev. to 2009) § 53-39a provides for indemnification for "economic loss . . . including the payment of any legal fees necessarily incurred," but does not define the term economic loss. Again, to determine the "commonly approved usage"; General Statutes § 1-1 (a); of the phrase economic loss, we consult the dictionary. See, e.g., *Key Air, Inc.* v. *Commissioner of Revenue Services*, supra, 294 Conn. 235. We note that the term economic loss has been defined as "[a] monetary loss such as lost wages or lost profits." Black's Law Dictionary (9th Ed. 2009); see also Merriam-Webster's Collegiate Dictionary (10th Ed. 2001) (defining "economic" as, inter alia, "relating to an economy," and defining "economy" as, inter alia, "the management of household or private affairs and [especially] expenses"). Given the breadth of these defi-

---

[18] See *D'Angelo* v. *Spada*, Superior Court, judicial district of Hartford, Docket No. CV 01-0806912-S (March 14, 2005) (denying defendant's motion to strike plaintiff's claims for legal fees, lost wages and lost benefits, in § 53-39a indemnification action); *Smith* v. *Hartford*, Superior Court, judicial district of Hartford, Docket No. CV 02-0815432 (March 27, 2003) (awarding plaintiff, suspended without pay due to unwarranted arrest, legal fees, lost wages and lost overtime pursuant to § 53-39a).

nitions, we conclude that § 53-39a is ambiguous as it relates to leave time, and therefore turn to other principles of statutory construction to guide our interpretation.

In construing § 53-39a, we find it significant that the legislature drafted the statute using the word "including" in an expansive manner. Although "the word 'include' may be considered a word of limitation as well as a word of enlargement"; *State* v. *White*, 204 Conn. 410, 422–23, 528 A.2d 811 (1987); its use in this context suggests that it is being used expansively because the legislature identified only one item as being included within economic loss, namely, "the payment of any legal fees necessarily incurred." General Statutes (Rev. to 2009) § 53-39a. See *State* v. *Rodriguez-Roman*, 297 Conn. 66, 76 n.7, 3 A.3d 783 (2010). If the legislature had intended to limit a plaintiff's recovery to only legal fees, it could have expressly done so by omitting the term economic loss and providing recovery for only attorney's fees.[19] Instead, the legislature identified the

---

[19] We note that in both civil and criminal actions, some jurisdictions explicitly provide qualified state employees with legal defense or limit indemnification to legal fees, while others, like Connecticut, use broader language. Compare Cal. Govt. Code § 995 (Deering 2010) ("a public entity shall provide for the defense of any civil action or proceeding brought against [an employee or former employee]"), Fla. Stat. Ann. § 111.065 (2) (West 2008) ("employing agency of any officer has the option to pay reasonable attorney's fees and costs for any officer in any civil or criminal action"), Haw. Rev. Stat. § 52D-8 (1993) ("police officer shall be represented and defended . . . [i]n criminal proceedings by an attorney to be employed and paid by the county in which the officer is serving"), and Utah Code Ann. § 63-30a-2 (2004) ("officer or employee shall be entitled to recover reasonable attorneys' fees and court costs necessarily incurred in the defense of . . . indictment or information from the public entity"), with Mass. Ann. Laws c. 258, § 9A (LexisNexis 2004) (in qualified civil action, "[t]he commonwealth shall indemnify members of the state police or an employee of bargaining unit five, respectively, from all personal financial loss and expenses, including but not limited to legal fees and costs"), and Wis. Stat. Ann. § 895.35 (1) (West 2006) (in qualified civil action, "city, town, village, school district, technical college district or county may pay all reasonable expenses which such officer necessarily expended by reason thereof").

payment of legal fees as just one financial loss, of presumably several, to be included in the term economic loss, and thus used the word including as a term of enlargement.

Moreover, in the absence of legislative history on point, we again consider the policy that § 53-39a was intended to further, namely, "to permit police officers to recoup the necessary expenses that they have incurred in defending themselves against unwarranted criminal charges arising out of their conduct in the course of their employment." *Cislo* v. *Shelton*, supra, 240 Conn. 598; see also *Rawling* v. *New Haven*, 206 Conn. 100, 112, 537 A.2d 439 (1988) ("An officer who is accused of committing a crime arguably within the course of duty will necessarily suffer a financial hardship in mounting an adequate defense. When the prosecution results in a dismissal or an acquittal, the legislature might reasonably have concluded that an officer should not be required to shoulder the costs of defense for conduct that solely benefited his or her employer."). Inasmuch as the defendant does not claim that leave time lacks economic value, consistent with the legislature's recognition that an officer may incur economic losses as a result of "conduct that solely benefited . . . her employer"; *Rawling* v. *New Haven*, supra, 112; that extend beyond legal fees, we conclude that the term economic loss, as used in § 53-39a, necessarily includes lost leave time attributable to a criminal prosecution.

We next address the defendant's claims that the trial court improperly: (1) concluded that the criminal prosecution caused the plaintiff's lost leave time; and (2) awarded the plaintiff damages on the basis of the evidence submitted. The trial court's determination of causation and damages in the present case are findings of fact, subject to the clearly erroneous standard of review on appeal. See, e.g., *Assn. Resources, Inc.* v. *Wall*, 298

Conn. 145, 184–85, 2 A.3d 873 (2010); *Lipshie* v. *George M. Taylor & Son, Inc.*, 265 Conn. 173, 182, 828 A.2d 110 (2003).

We conclude that the trial court's determinations that the criminal prosecution caused the plaintiff's lost leave time, and its award of damages, were not clearly erroneous. The trial court properly could have credited the plaintiff's trial testimony on this point; on direct examination, the plaintiff testified that she "used vacation and earned time when [she] needed to go to court, prepare for court, or [she] was unable to perform [her] job, to perform [her] duties from stress." Similarly, on cross-examination, the plaintiff further testified that when she "took vacation time and earned time it was either to meet with counsel, to go to court, or because [she] was not well enough to go to work," and that she "took sick time when [she] was physically unable to go to work, for example, diarrhea."[20] The trial court reasonably could have credited this testimony and concluded that the leave time taken by the plaintiff was caused by the criminal prosecution.

B

Finally, we address the defendant's arguments that the trial court improperly concluded that: (1) any lost overtime pay was a result of the criminal prosecution; (2) the plaintiff, although on administrative duty, was entitled to overtime pay; and (3) the plaintiff met her burden in proving the amount of overtime to which she was entitled. Specifically, the defendant argues that: (1) the plaintiff's ineligibility to receive overtime pay resulted from her placement on administrative duty,

---

[20] The plaintiff later testified on cross-examination that she took sick and vacation days due to the stress related to the prosecution of the case, both before and after her arrest. The plaintiff also testified on cross-examination, and, later, on redirect examination, that she took leave time to work on her case from home.

rather than from the criminal prosecution; (2) while on administrative duty, the plaintiff was not eligible to work overtime because she did not work "shift operations" as required by the agreement; and (3) the overtime damages award was improperly calculated. The defendant's challenges all pertain to factual findings of the trial court, which we review for clear error. See, e.g., *Lipshie* v. *George M. Taylor & Son, Inc.*, supra, 265 Conn. 182.

The defendant's first two arguments, which relate to causation, implicate our conclusion in part II of this opinion, namely, that the critical finding for the purposes of calculating economic loss is whether there was a clear nexus between that loss and the criminal prosecution. The parties dispute, however, whether the plaintiff's placement on administrative duty, which rendered her ineligible for overtime pay, was an administrative action taken independently by the defendant or was a result of "the criminal investigations pursued by both the [defendant's] police department and the [West Hartford police department]."[21] Thus, the accuracy of the trial court's conclusion that "the evidence supports the plaintiff's claim that she was unable to work overtime because of the prosecution and, as a result, she suffered a corresponding economic loss of overtime earnings," depends on whether the defendant placed the plaintiff on administrative duty because of a police investigation. As such, the trial court's finding on remand of causation relative to the defendant's placement of the plaintiff on administrative duty will control its determination of which portion of the plaintiff's lost overtime pay was attributable to the criminal prosecution.

---

[21] The trial court noted that, on April 20, 2006, Robert Zaik, manager of labor relations for the defendant, met with the defendant's chief executive officer and "determined that, due to Atkins' citizen complaint against her, the plaintiff would be taken off uniformed patrol status and placed on administrative duty immediately."

Finally, we address the defendant's claim that, in determining the amount of the damages attributable to lost overtime pay, the trial court improperly accepted the plaintiff's calculation that excluded herself from the calculation of the average amount of overtime worked by the defendant's police officers, thereby artificially increasing the average amount of overtime hours worked. The defendant argues that the proper calculation would include the plaintiff, under the assumption that there is a set number of overtime hours available in any given year that would not increase if the plaintiff had been eligible for overtime. In response, the plaintiff contends that the trial court's overtime calculations were supported by the evidence and not, therefore, clearly erroneous. We agree with the plaintiff. The trial court had before it the plaintiff's documented history of overtime, as well as the plaintiff's testimony in support of her claim for overtime, which it reasonably could have credited. Neither the parties' briefs nor our independent research have revealed any legal standard governing the apportionment of lost overtime pay between employees. In the absence of such a standard, we conclude that the trial court's calculation of lost overtime was not clearly erroneous. See *Morris* v. *American National Can Corp.*, 952 F.2d 200, 203–204 (8th Cir. 1991) (overtime damages calculation subject to clearly erroneous standard of review under equal overtime policy); *Easley* v. *Northern Shipping Co.*, 597 F. Sup. 954, 959 (E.D. Pa. 1984) (calculating lost overtime on basis of difference between plaintiff's overtime hours and average overtime hours of similar employees); cf. *Moe* v. *United States*, United States District Court, Docket No. 06-CV-577A (W.D.N.Y. December 3, 2010) (declining reimbursement for "lost opportunity" to work overtime because of "insufficient evidence of

a history of working all overtime hours available to [the plaintiff]").[22]

The judgment is reversed as to the amount of damages and the case is remanded for a new hearing in damages in accordance with this opinion; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

---

[22] We note that, before the trial court, the defendant claimed that the plaintiff's overtime numbers were grossly inflated because she included overtime hours that the defendant was required to pay to another officer to cover patrol shifts that otherwise would have been staffed by the plaintiff at normal pay if she had not been placed on administrative duty. The defendant does not, however, renew this claim on appeal.