## ROBERT MURTHA *v.* CITY OF HARTFORD
## (SC 18751)

Rogers, C. J., and Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

1

Argued September 22—officially released November 29, 2011

*Nathalie Feola-Guerrieri*, senior assistant corporation counsel, with whom was *Helen Apostolidis*, for the appellant (defendant).

*Donn A. Swift*, with whom, on the brief, were *Hugh F. Keefe*, *Benjamin D. Gettinger* and *Michael A. Georgetti*, for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. The defendant, the city of Hartford, appeals[1] from the judgment of the trial court awarding the plaintiff, Robert Murtha, $562,277.50 in an indemnification action brought pursuant to General Statutes (Rev. to 2009) § 53-39a.[2] On appeal, the defendant claims

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes (Rev. to 2009) § 53-39a provides in relevant part: "Whenever, in any prosecution of an officer of . . . a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred. Such officer may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section."

Section 53-39a was amended by No. 10-68 of the 2010 Public Acts, effective October 1, 2010, which deleted the phrase "any legal fees necessarily

that the judgment of the trial court ordering the defendant to reimburse the plaintiff $460,613.40 in attorney's fees was improper because the fees were not actually incurred by the plaintiff and were excessive. In response, the plaintiff asserts that the trial court properly ordered the defendant to reimburse him his attorney's fees because he had incurred those fees and the fees were reasonable. The defendant further claims that the trial court improperly concluded that: (1) the plaintiff was not required to exhaust his administrative remedies under the collective bargaining agreement prior to seeking indemnification under § 53-39a; (2) the plaintiff's employment claims were cognizable under § 53-39a; (3) the plaintiff had standing to assert his employment claims under § 53-39a; (4) lost wages and lost employment benefits constitute "economic loss" within the meaning of § 53-39a; and (5) the plaintiff could recover under § 53-39a when his suspension resulted from the defendant's administrative proceedings. The plaintiff responds that our recent decision in *Nyenhuis* v. *Metropolitan District Commission*, 300 Conn. 708, 22 A.3d 1181 (2011), controls these claims and that the trial court's award for economic loss was proper. We agree with the plaintiff, and accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On January 26, 2003, the plaintiff, while in the course of his employment as a uniformed police officer of the defendant's police department, was involved in a shooting. On February 25, 2003, the plain-

incurred," and inserted language that such economic loss "includ[es] the payment of attorney's fees and costs incurred during the prosecution and the enforcement of this section." This amendment superseded our holding in *Link* v. *Shelton*, 186 Conn. 623, 632, 443 A.2d 902 (1982), wherein we concluded that § 53-39a did not provide for "recovery of attorney's fees sustained as a result of a separate action to enforce the right to indemnification under § 53-39a." All references to § 53-39a are to the 2009 revision unless otherwise noted.

tiff was arrested and charged in connection with the shooting with assault in the first degree in violation of General Statutes § 53a-59 (a) (5), one count of falsely reporting an incident in violation of General Statutes § 53a-180c (a) (3), and one count of fabricating physical evidence in violation of General Statutes § 53a-155 (a) (2). On that same day, the chief of police of the defendant's police department forwarded a letter to the plaintiff, referencing the date of the plaintiff's arrest and the criminal charges against the plaintiff and suspending him without pay "pending the outcome of this matter through administrative procedures."

Subsequently, the plaintiff retained two attorneys, Hugh F. Keefe and Michael A. Georgetti, to represent him with regard to the criminal charges. The plaintiff entered into separate fee agreements with each attorney. After a trial, the plaintiff was acquitted of all charges.

Thereafter, pursuant to § 53-39a, the plaintiff brought this action against the defendant seeking reimbursement for legal fees, lost wages and lost employment benefits. The defendant filed a motion to dismiss the plaintiff's claims, asserting that: (1) the trial court lacked subject matter jurisdiction over the plaintiff's claims for lost wages and lost employment benefits because recovery under § 53-39a is limited to legal fees; and (2) the plaintiff failed to exhaust his administrative remedies under the collective bargaining agreement prior to filing the action. The trial court denied the defendant's motion to dismiss.

Subsequently, the defendant contended that the plaintiff's claims for lost wages and lost employment benefits were not cognizable under § 53-39a because they were breach of contract claims, not indemnification claims. The defendant further asserted that, even if cognizable under § 53-39a, the plaintiff could not

recover under that provision because his suspension resulted from the defendant's administrative proceedings, not the plaintiff's arrest or criminal prosecution. The trial court rejected these jurisdictional claims and awarded the plaintiff damages of $62,243.05 for lost base salary, $25,020 for lost overtime, and $14,401.05 for lost accrued time.

The defendant also claimed that the plaintiff was not entitled to the entire amount of attorney's fees sought. First, the defendant asserted that the plaintiff was only obligated to pay the attorney's fees for which he had been billed, and that, therefore, the defendant was not obligated to indemnify the plaintiff for any amount in excess of those fees. Specifically, the defendant asserted that the plaintiff was not entitled to reimbursement for any of Keefe's fees beyond the $20,000 retainer he had paid because Keefe had not billed the plaintiff for any amount in excess of the retainer. The defendant also asserted that the plaintiff was not entitled to the total amount of both attorney's fees sought because these fees were excessive. The trial court found that the fee agreement between the plaintiff and Keefe was ambiguous and, therefore, heard evidence regarding the parties' understanding of the agreement. On the basis of that evidence, the trial court determined that the plaintiff was obligated to pay Keefe for the legal services rendered beyond the $20,000 retainer. The trial court further found that the agreement between the plaintiff and Georgetti was clear in that the plaintiff was obligated to pay Georgetti legal fees beyond the initial $2500 retainer. The trial court also found that the attorney's fees charged were necessarily incurred because there was no duplication of effort and the attorneys appeared to have very different roles in the plaintiff's representation. Accordingly, the trial court awarded the plaintiff additional damages of $207,307.03 for Keefe's attorney's

fees and $253,306.37 for Georgetti's attorney's fees. Additional facts will be set forth as necessary.

I

On appeal, the defendant claims that the trial court's judgment ordering the defendant to reimburse the plaintiff $460,613.40 in attorney's fees was improper. Specifically, the defendant asserts that the trial court improperly: (1) awarded fees beyond those actually incurred by the plaintiff; (2) used parol evidence to interpret the agreement between the plaintiff and Keefe; and (3) awarded attorney's fees that were not "necessarily incurred" as required by § 53-39a. In response, the plaintiff asserts that the trial court properly concluded that the terms of the contract between the plaintiff and Keefe were ambiguous, that the parol evidence established that the plaintiff actually incurred the attorney's fees and that the attorney's fees were reasonable.

As a preliminary matter, we set forth the applicable standard of review and guiding principles. The resolution of this appeal requires us to interpret the language of a contract, in this case the agreement between the plaintiff and Keefe. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 355, 999 A.2d 713 (2010).

"[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]. . . . Where the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms. A court will not torture

words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [written instrument] must emanate from the language used in the [writing] rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 623, 987 A.2d 1009 (2010). "If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, supra, 297 Conn. 355.

General Statutes (Rev. to 2009) § 53-39a provides in relevant part: "Whenever, in any prosecution of an officer of . . . a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, *including the payment of any legal fees necessarily incurred.* Such officer may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section." (Emphasis added.)

## A

The defendant first asserts that, under the clear language of the agreement between the plaintiff and Keefe, the plaintiff was obligated to pay only the $20,000 retainer, and that the trial court improperly concluded that the language of the agreement was ambiguous and improperly considered parol evidence regarding the parties' intent under the contract. In response, the plain-

tiff claims that the trial court properly concluded that the language of this agreement was ambiguous as to whether, under the terms of the contract, the plaintiff was obligated to pay only the $20,000 retainer or if he was obligated to pay more. Furthermore, the plaintiff asserts that, after finding that the language of the agreement was ambiguous, the trial court properly considered evidence regarding the parties' intent under the contract. We agree with the plaintiff.

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005).

In the present case, the contract between the plaintiff and Keefe provides in relevant part: "This will confirm our conversation in my office on [December 2, 2005] in the above-captioned case in which you are charged with [a]ssault [in the first degree], [f]abricating [p]hysical [e]vidence and [f]alsely [r]eporting an [i]ncident. I indicated to you [I] would agree to represent you in the trial of this case along with Attorney Michael Georgetti

of Hartford. That agreement is subject to the following terms and conditions:

"1. As I understand it, it is agreed that I would be the lead lawyer at trial. . . .

"3. Fee. As you know, if you are acquitted of the charges or dismissed, the [defendant] is responsible for your legal fees. If you are convicted of anything, the [defendant] is not responsible. Even if [the defendant pays], it is usually at a reduced fee. Accordingly, I would charge you a $20,000 non-refundable retainer. . . ."[3]

In determining that the agreement was ambiguous, the trial court found that the agreement was clear that the plaintiff assumed an obligation to Keefe to pay him for legal fees, but that the agreement was not clear as to the amount of the fees that the plaintiff agreed to pay Keefe. We agree with the trial court's conclusion that the agreement was ambiguous. The agreement uses the terms "retainer" and "legal fees," without a definition of either term. We begin our examination of the parties' written agreement by determining the common understanding of the terms "retainer" and "legal fees." Black's Law Dictionary defines retainer as "[a] lump-sum fee paid by the client to engage a lawyer at the outset of a matter" or "[a]n advance payment of fees for work that the lawyer will perform in the future." Black's Law Dictionary (9th Ed. 2009). The American Heritage Dictionary of the English Language (4th Ed. 2006) defines "legal fees" as a "fee paid for legal services." Therefore, the use of these two terms together does not clarify whether the plaintiff was obligated to pay fees beyond the retainer. Moreover, the agreement explains that if the plaintiff was acquitted or the charges were dismissed, the defendant would be responsible

[3] We note that the plaintiff has not challenged the sufficiency of the agreement. Nevertheless, the plaintiff acknowledges that it would have been preferable if the retainer agreement had been clearer and more complete.

for his legal fees, at a reduced rate without any explanation of what rate Keefe would charge the plaintiff or what would constitute the reduced rate. We conclude, therefore, that the trial court properly found that the agreement was ambiguous.

The defendant further asserts that the trial court improperly considered parol evidence to interpret the terms of the contract between the plaintiff and Keefe. In response, the plaintiff contends that the trial court properly considered such evidence because the agreement was ambiguous. We agree with the plaintiff.

The following additional facts are necessary to our resolution of the plaintiff's claim. After the trial court concluded that the terms of the agreement between the plaintiff and Keefe were ambiguous as to whether the plaintiff incurred legal fees beyond the retainer, it considered testimony of the plaintiff and Keefe regarding their understanding of the agreement.

Keefe testified that he never sent a bill to the plaintiff for his legal fees during the pendency of the case. He did not do so because he did not think that the plaintiff would have been able to pay any bills sent to him on the basis of his limited salary as a police officer and the fact that he had been suspended without pay on the day of his arrest. Nevertheless, Keefe further testified that he considered the plaintiff obligated to pay Keefe's legal fees, but understood that he realistically could not pay them at that time. Keefe also testified that he sent a request to the defendant to be paid his legal fees pursuant to § 53-39a.

The plaintiff also testified that he understood that he was accruing bills for Keefe's legal fees, but knew he would likely not be able to pay those bills. The plaintiff further testified that he was confident in the strength of his case and the fact that § 53-39a provided that the bills would be paid. The plaintiff testified that he

understood that if he lost the case and went to prison, he would be responsible for the legal bills. On the basis of this parol evidence, the trial court determined that the plaintiff incurred legal fees to Keefe beyond the retainer.

The rule regarding the use of parol evidence in contract interpretation is well established. "[W]hen the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . . If the writing is ambiguous or does not set forth the entire agreement, however, the court may look to parol evidence to explain the ambiguity or add a missing term." (Citation omitted; internal quotation marks omitted.) *Ziotas* v. *Reardon Law Firm, P.C.*, 111 Conn. App. 287, 293–94, 959 A.2d 1013 (2008), rev'd in part, 296 Conn. 579, 997 A.2d 453 (2010).

"When a writing, on its face, does not set forth the entire agreement of the parties, the court may look to parol evidence to add missing terms. . . . In such circumstances, the parties' intent is a question of fact, and the trial court examines the evidence adduced at trial to determine that intent. . . . The factual determination of the parties' intent is to be garnered in light of the situation of the parties and the circumstances surrounding the contract, along with the primary purpose of the contract. . . . Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing

court on the entire evidence is left with the definite
and firm conviction that a mistake has been committed.
. . . Because it is the trial court's function to weigh
the evidence and determine credibility, we give great
deference to its findings. . . . In reviewing factual find-
ings, [w]e do not examine the record to determine
whether the [court] could have reached a conclusion
other than the one reached. . . . Instead, we make
every reasonable presumption . . . in favor of the trial
court's ruling." (Citations omitted; internal quotation
marks omitted.) Id., 300.

Parol evidence is admissible to supply terms that are
missing from a contract. *TIE Communications, Inc.* v.
*Kopp*, 218 Conn. 281, 288–89, 589 A.2d 329 (1991). In
this case, the total amount of attorney's fees and the
manner of billing was missing from the contract. Our
review of the record in the present case reveals ade-
quate support for the trial court's findings in the testi-
mony presented at trial, which that court credited. In
light of the situation of the parties at the time, the trial
court reasonably inferred that the agreement contem-
plated that the plaintiff would continue to accrue legal
fees beyond the retainer. Accordingly, we conclude that
the trial court's finding of a contract between the plain-
tiff and Keefe in which the plaintiff incurred legal fees
beyond the retainer was not clearly erroneous.

B

The defendant further contends that the trial court
improperly ordered it to pay attorney's fees that were
not "necessarily incurred."[4] Specifically, the defendant

---

[4] It is important to note that the language of § 53-39a was amended by
No. 10-68 of the 2010 Public Acts, effective October 1, 2010, which deleted
the phrase "any legal fees necessarily incurred," and inserted language that
such economic loss "includ[es] the payment of attorney's fees and costs
incurred during the prosecution and the enforcement of this section." See
footnote 2 of this opinion. Because the award of attorney's fees in this
action occurred in February, 2010, the 2009 revision of § 53-39a is controlling
in the present case.

claims that the trial court improperly awarded attorney's fees that were excessive because the efforts of Keefe and Georgetti were duplicative. In response, the plaintiff contends that the trial court's award of attorney's fees was neither unnecessary nor excessive. We agree with the plaintiff.

The trial court made the following findings regarding the attorney's fees: "Each lawyer has provided the [trial court] with a detailed listing of all the hours they spent on the case prior to and during the trial. No evidence or argument was raised that any of these claimed hours or services were in fact not performed. The trial lasted six weeks and there were [twenty-seven] witnesses who testified. The documents setting forth the time spent on each task are detailed, thorough and appear reasonable. None of these representations are challenged. [Georgetti] testified he interviewed witnesses, reviewed perhaps thousands of documents and organized them for [Keefe]." The trial court also heard testimony from an expert witness, who opined that the attorney's fees were reasonable.

Section 53-39a does not indicate what constitutes "necessarily incurred" attorney's fees. "No one can state the reasonable value of legal services as a fact. He can only express his opinion. The value is based upon many considerations." *Hoenig* v. *Lubetkin*, 137 Conn. 516, 524, 79 A.2d 278 (1951). "A court has few duties of a more delicate nature than that of fixing counsel fees. The degree of delicacy increases when the matter becomes one of review on appeal. The principle of law, which is easy to state but difficult at times to apply, is that only in case of a clear abuse of discretion by the trier may we interfere. . . . The trier is always in a more advantageous position to evaluate the services of counsel than are we." (Citations omitted.) Id., 525.

Based on the foregoing, we cannot conclude that the trial court's award of attorney's fees was excessive.

Accordingly, we conclude that the trial court did not abuse its discretion in awarding damages to the plaintiff for the attorney's fees of Keefe and Georgetti.

## II

The defendant further claims that the trial court improperly awarded the plaintiff damages for economic loss. Specifically, the defendant asserts that the trial court improperly determined that: (1) the plaintiff was not required to exhaust his administrative remedies under the collective bargaining agreement prior to seeking indemnification under § 53-39a; (2) the plaintiff's employment claims were cognizable under § 53-39a; (3) the plaintiff had standing to assert his employment claims under § 53-39a; (4) lost wages and lost employment benefits constitute "economic loss" within the meaning of § 53-39a; and (5) the plaintiff could recover under § 53-39a when his suspension resulted from the defendant's administrative proceedings.

After the parties submitted their briefs in this appeal, this court issued its decision in *Nyenhuis* v. *Metropolitan District Commission*, supra, 300 Conn. 708. The plaintiff asserts that *Nyenhuis* controls the defendant's claims regarding the trial court's award of damages for economic loss and that the trial court's award for economic loss was proper. We agree with the plaintiff.

In *Nyenhuis* v. *Metropolitan District Commission*, supra, 300 Conn. 708, this court considered an appeal by the defendant, the metropolitan district commission (commission), from the judgment of the trial court awarding the plaintiff, Gabrielle Nyenhuis, who was a police officer of the commission, damages of $73,072.50 in an indemnification action brought pursuant to § 53-39a. On appeal, the commission claimed that "the trial court improperly concluded that the plaintiff: (1) did not need to exhaust administrative remedies under the applicable collective bargaining agreement (agreement)

before bringing this action; (2) was entitled to indemnification for economic loss starting on the date of the incident that led to the underlying criminal charges, rather than the date when she was arrested; and (3) was entitled to indemnification under § 53-39a for sick time, earned time and vacation time (collectively, leave time) that she used during the course of the prosecution, and lost overtime pay that she would have received but for the prosecution." Id., 711–12. We concluded that "the plaintiff was not required to exhaust her administrative remedies under the agreement and that she is entitled to indemnification for leave time used and overtime pay lost as a result of the prosecution . . . [but] that the plaintiff is entitled to indemnification under § 53-39a only for those economic losses, prearrest and postarrest, that have a clear nexus to the criminal prosecution . . . ." Id., 712.

The claims for lost wages and employment benefits raised by the plaintiff in the present case are controlled by our decision in *Nyenhuis*. First, contrary to the defendant's claim that the plaintiff was required to exhaust his administrative remedies under the collective bargaining agreement in this case, in *Nyenhuis*, we concluded that a plaintiff is not required to exhaust the administrative remedies under a collective bargaining agreement prior to filing an action under § 53-39a. Second, the defendant claims that the plaintiff's claims for economic loss were not cognizable under § 53-39a, that the plaintiff did not have standing to assert these claims under § 53-39a, and that lost wages and lost employment benefits do not constitute "economic loss" within the meaning of § 53-39a. These claims also are contrary to our decision in *Nyenhuis*, in which we concluded that a plaintiff is entitled to indemnification for leave time used and overtime pay lost as a result of the prosecution, and that a plaintiff is entitled to indemnification under § 53-39a for those economic losses, prearrest and postarrest, that have a clear nexus to the criminal prose-

cution. Third, the defendant asserts that the plaintiff should not have been able to recover damages for economic loss under § 53-39a because his suspension resulted from the defendant's administrative proceedings. In *Nyenhuis*, we concluded that a plaintiff is entitled to indemnification under § 53-39a for those economic losses that have a clear nexus to the criminal prosecution. In the present case, the trial court explicitly found that "[i]t seems clear . . . that the plaintiff was being suspended because of his arrest." Accordingly, we conclude that the plaintiff was entitled to damages for economic loss during his entire suspension and that the trial court's award of damages for economic loss in the present case was proper.[5]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[5] The defendant also claims that the trial court improperly awarded the plaintiff damages for lost wages for the first six months of his suspension despite the plaintiff's failure to mitigate his damages for that period. "We have often said in the contracts and torts contexts that the party receiving a damage award has a duty to make reasonable efforts to mitigate damages. . . . What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier. . . . Furthermore, we have concluded that the breaching party bears the burden of proving that the nonbreaching party has failed to mitigate damages." (Citations omitted; internal quotation marks omitted.) *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 229, 676 A.2d 844 (1996). In the present case, the trial court determined that the defendant had not met its burden of proving that the plaintiff failed to make reasonable efforts to mitigate his damages. On the basis of the record in the present case, we cannot conclude that the trial court's findings of fact on this issue were clearly erroneous.