GARY WARREN LAWSON *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 33321)

DiPentima, C. J., and Alvord and Bear, Js.

---

Argued January 19—officially released April 3, 2012

*Gary Warren Lawson,* pro se, the appellant (plaintiff).

*Eileen Meskill,* assistant attorney general, with whom, on the brief, was *George Jepsen,* attorney general, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Gary Warren Lawson, appeals from the trial court's judgment affirming the determination of the hearing officer of the defendant,

the commissioner of motor vehicles, to suspend the plaintiff's motor vehicle license. On appeal, the plaintiff claims that the trial court erred when it determined that it lacked subject matter jurisdiction to hear his appeal because he failed to file his appeal before the expiration of the forty-five day period pursuant to General Statutes § 4-183 (c). We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. The plaintiff was arrested by officers from the Derby police department for operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a. Upon arrest, the plaintiff was transported to the Derby police station where he was advised of his *Miranda*[1] rights and of the implied consent law.[2]

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] General Statutes § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine and, if such person is a minor, such person's parent or parents or guardian shall also be deemed to have given their consent.

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and thereafter, after being apprised of such person's constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that such person's license or nonresident operating privilege may be suspended in accordance with the provisions of this section if such person refuses to submit to such test, or if such person submits to such test and the results of such test indicate that such person has an elevated blood alcohol content, and that evidence of any such refusal shall be admissible in accordance with subsection (e) of section 14-227a and may be used against such person in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that such officer informed the person that such person's license or nonresident operating privilege may be suspended if such person refused to submit to such test

Pursuant to General Statutes § 14-227b (b), the plaintiff was informed that he could either submit to a breathalyzer test or other sobriety tests or his license would be suspended by the defendant for six months. The plaintiff refused to take the tests requested by the police.

Thereafter, the Derby police department forwarded a written report of the plaintiff's refusal to take the sobriety tests to the defendant. The defendant subsequently began the process of suspending the plaintiff's license. The plaintiff requested an administrative hearing. The hearing first was scheduled for August 11, 2009, but after the plaintiff requested additional time to subpoena witnesses, the hearing was continued. The hearing was rescheduled for August 28, 2009.

Following the hearing, the hearing officer found that the police had probable cause to arrest the plaintiff, that the plaintiff refused sobriety tests and that the plaintiff had been operating his motor vehicle when arrested. The hearing officer therefore suspended the plaintiff's license for six months. The plaintiff petitioned the defendant for reconsideration of the decision on September 16, 2009. The defendant denied the petition on September 29, 2009. On November 12, 2009, the plaintiff filed a recognizance bond in the clerk's office of the Superior Court in the judicial district of Ansonia-Milford (clerk's office), but he failed to file his administrative appeal. On November 24, 2009, the plaintiff moved for indigent status, which was granted. The plaintiff filed his appeal with the clerk's office, as well as his appearance, on November 27, 2009.

At the hearing on the merits, the plaintiff did not dispute that his time to appeal the decision of the hearing officer expired pursuant to § 4-183 (c) (2) on Novem-

or if such person submitted to such test and the results of such test indicated that such person had an elevated blood alcohol content. . . . ."

ber 12, 2009.[3] The plaintiff claimed, however, that he had filed his appeal contemporaneously with his paying the recognizance bond on November 12, 2009. In support of this claim, the plaintiff argued that the clerk's office would not accept a bond without his filing an appeal. In response, the court provided the plaintiff with an opportunity to present evidence as to the customary practices of the clerk's office in accepting recognizance bonds and as to whether the clerk's office had any information, such as a log book, that would provide support for the plaintiff's argument. The court provided the plaintiff with a deadline of February 14, 2011, by which to produce the evidence.

On February 28, 2011, two weeks after the deadline set by the court, the plaintiff provided the court with a personal affidavit. The affidavit stated that the plaintiff had spoken to the clerk who had provided him with the original receipt for his recognizance bond and that the clerk was unable to provide any log book, copy, or other evidence to support the plaintiff's allegation that he timely filed his appeal. The affidavit did not provide information regarding the usual protocol of the clerk's office with regard to accepting recognizance bonds as requested by the court.

---

[3] General Statutes § 4-183 (c) provides in relevant part: "(1) Within forty-five days after mailing of the final decision under section 4-180 . . . or (2) within forty-five days after the agency denies a petition for reconsideration of the final decision pursuant to subdivision (1) of subsection (a) of section 4-181a . . . a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the Attorney General in Hartford and file the appeal with the clerk of the superior court for the judicial district of New Britain or for the judicial district wherein the person appealing resides or, if that person is not a resident of this state, with the clerk of the court for the judicial district of New Britain. Within that time, the person appealing shall also serve a copy of the appeal on each party listed in the final decision at the address shown in the decision, provided failure to make such service within forty-five days on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal . . . ."

On March 16, 2011, the court issued a memorandum of decision in which it determined that it lacked subject matter jurisdiction over the plaintiff's appeal because the appeal was filed after the expiration of the forty-five day statutory appeal period pursuant to § 4-183 (c) (2).[4] This appeal followed.

The plaintiff argues that the trial court erred when it concluded that it lacked subject matter jurisdiction to hear the plaintiff's appeal due to the plaintiff's failure to file his appeal before the expiration of the statutory period. We disagree.

We set forth the applicable standard of review. "Appeals to courts from administrative agencies exist only under statutory authority. . . . A statutory right to appeal may be taken advantage of only by *strict compliance* with the statutory provisions by which it is created. . . . Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal. . . . The failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the courts of jurisdiction to hear it." (Emphasis in original; internal quotation marks omitted.) *Hefti* v. *Commission on Human Rights & Opportunities*, 61 Conn. App. 270, 273, 763 A.2d 688, cert. denied, 255 Conn. 948, 769 A.2d 62 (2001).

"In cases involving administrative appeals, even where appellants may have been misled by the actions or inactions of employees of the clerk's office, our Supreme Court has not deviated from the established principles of strict compliance. . . . While the trial court can show some degree of leniency toward a party

---

[4] The court proceeded to analyze the merits of the plaintiff's claim, however, "[o]nce it becomes clear that the trial court lacked subject matter jurisdiction to hear the [action], any further discussion of the merits is pure dicta." (Internal quotation marks omitted.) *PHH Mortgage Corp.* v. *Cameron*, 130 Conn. App. 238, 242, 22 A.3d 1282 (2011).

when there is evidence that it was misguided by court personnel, the court cannot disregard established and mandatory requirements which circumscribe jurisdiction in the first instance. . . . The forty-five day filing requirement of § 4-183 (c) is a mandatory jurisdictional requirement." (Citations omitted; internal quotation marks omitted.) Id., 274.

The plaintiff argues that he filed his appeal by paying a recognizance bond and handing a copy of his appeal to the clerk of the court. The court, however, made a finding to the contrary. The court found that the filing of the bond did not constitute a "filing" with the clerk of the court and that the appeal was not filed until November 27, 2009. "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Murtha* v. *Hartford*, 303 Conn. 1, 12–13, 35 A.3d 177 (2011). The plaintiff argues that the court ignored or misconstrued his personal affidavit, and thus the court erred in finding that the appeal was filed untimely. It was within the court's discretion, however, to weigh the evidence or lack thereof. We therefore cannot conclude that the court's finding that the plaintiff's appeal was filed untimely was clearly erroneous. Accordingly, the court lacked subject matter jurisdiction to hear the plaintiff's appeal.

The judgment is affirmed.