******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NPC OFFICES, LLC *v.* WILLIAM KOWALESKI ET AL.
(SC 19408)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 9, 2015—officially released March 1, 2016*

*Michael S. Taylor*, with whom, on the brief, were *James P. Sexton* and *Matthew C. Eagan*, for the appellant (plaintiff).

*Michelle M. Seery*, with whom was *William J. O'Sullivan*, for the appellees (defendants).

*Opinion*

EVELEIGH, J. The dispositive issue in this appeal is the determination of the meaning of the term "professional offices" as used in a right-of-way agreement (agreement), which created an express easement for the benefit of property owned by the plaintiff, NPC Offices, LLC, over a driveway located on the property owned by the defendant 184–188 South Main Street, LLC, a limited liability company under the ownership and control of the defendants William Kowaleski and Sharon Kowaleski. The plaintiff appeals, on the granting of certification,[1] from the judgment of the Appellate Court affirming the judgment of the trial court quieting title to the driveway in favor of the defendants and declaring the easement terminated. *NPC Offices, LLC* v. *Kowaleski*, 152 Conn. App. 445, 447–48, 100 A.3d 42 (2014). On appeal to this court, the plaintiff claims that the Appellate Court improperly affirmed the judgment of the trial court based upon its conclusion that the plaintiff's property had been used for purposes other than "professional offices" in violation of the terms of the agreement. We agree with the plaintiff and, accordingly, reverse the judgment of the Appellate Court and remand the case for a new trial in accordance with this opinion.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "The plaintiff, a limited liability company of which Marc Aronson is the sole member, owns an office building located at 192 South Main Street in Middletown. Aronson operates a psychologist's office. The defendant 184–188 South Main Street, LLC, a limited liability company under the ownership and control of the defendants William Kowaleski and Sharon Kowaleski, owns an office building located at 184–188 South Main Street, which is situated on property abutting the plaintiff's property. The defendants operate a hair salon. The buildings are separated by a driveway, located on the defendants' property, which provides access to a parking area behind both buildings.

"The plaintiff's claimed right of access to the driveway stems from an agreement entered into by previous owners of the two properties. Created in 1960, the agreement referred to the owners of the property located at 184–188 South Main Street as the 'First Parties' and the owners of the property at 192 South Main Street as the 'Second Parties.' It provided that 'the First Parties grant to the Second Parties and unto the survivor of them, and unto such survivor's heirs and assigns forever the right (in common with the First Parties' heirs and assigns) to pass and re-pass by vehicle or on foot over the entire length of said driveway running from South Main Street to the garages on the First Parties' premises, except that, in the event that [192 South Main Street] shall be used for purposes other than

residential or professional offices, the Second Parties' right to use the said driveway shall terminate.' The agreement was recorded and was the sole instrument in either property's chain of title governing the rights and obligations of the parties as they relate to the driveway. The garages referenced in the agreement no longer existed at the time of trial, but the driveway remained intact.

"In 1990, the defendants acquired their property and the plaintiff acquired its property in 2008. Soon after, the use of the driveway and the parking area behind the offices became a source of frequent disputes, leading to an acrimonious relationship between the parties. On or about September 6, 2008, the defendants constructed an iron fence behind the buildings along the properties' common boundary in an effort to separate the properties' respective parking areas. The fence severely restricted access to and maneuverability in the parking area behind the plaintiff's property.

"Thereafter, the plaintiff commenced the present action and filed a complaint dated September 8, 2008. The plaintiff's operative complaint asserted, [in addition to claims of fraudulent transfer, entry and detainer, and creation of prescriptive and implied easements] a quiet title claim asking the court to find that the erection of the fence violated the terms of the agreement and to clarify the extent of the [easement], and a claim seeking an injunction restoring the plaintiff's rights under the agreement. The defendants denied the plaintiff's claims and raised special defenses, including an assertion that the plaintiff's property had been used for purposes other than professional offices or residential uses, thus terminating the . . . agreement. The defendants also asserted counterclaims, including, among other things, claims of quiet title asking the court to find that the agreement had been terminated, civil trespass and private nuisance. The plaintiff denied the defendants' counterclaims and raised special defenses.

"After a trial, the court found that the . . . agreement created an express easement for the benefit of the plaintiff's property. The court found that this easement was in effect until the plaintiff's property was used by a mortgage brokerage, a home [health-care] agency and an appliance delivery coordination service. The court concluded that the operation of these businesses constituted use of the property for purposes other than residential or professional offices, thus terminating the easement." *NPC Offices, LLC* v. *Kowaleski*, supra, 152 Conn. App. 448–50. The trial court explained as follows: "While the court in no way wishes to diminish the undeniable social utility of the three businesses in question, it is clear that each can be operated without 'a prolonged course of specialized instruction and study' " and, thus, they do not constitute "professional office[s]." The court further found that

no prescriptive or implied easement existed on behalf of the plaintiff, and rejected the defendants' counterclaims of trespass and private nuisance. Finally, in regard to the plaintiff's claim of fraudulent transfer, the court noted that "the facts support the conclusion that the transfer was done for reasons wholly unrelated to this [action]."

The plaintiff appealed from the judgment of the trial court to the Appellate Court. The defendants cross appealed, claiming that the trial court improperly rejected the defendants' civil trespass and private nuisance counterclaims. The Appellate Court consulted the dictionary definitions of the terms "professional" and "office" and determined that "the unambiguous meaning of 'professional office' as used in the easement is a place where business is conducted or services are performed by persons who belong to a learned profession or whose occupation requires a high level of training and proficiency." *NPC Offices, LLC* v. *Kowaleski*, supra, 152 Conn. App. 452. Using this definition, the Appellate Court concluded that the trial court had properly determined that the mortgage brokerage, home health-care agency, and appliance delivery coordination service that had been operated out of the plaintiff's property "did not qualify as professional offices, as a high level of training and proficiency was not required for their operation." Id., 453. Furthermore, in regard to the defendants' claims on cross appeal, the Appellate Court concluded that the defendants "failed to present any evidence of damages at trial" and that, thus, "a reversal of the [trial] court's conclusion rejecting the defendants' trespass and private nuisance claims would result only in an award of nominal damages to the defendants." Id., 458. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id. This appeal followed.

On appeal, the plaintiff claims that the Appellate Court improperly concluded that the meaning of the term "professional offices" in the agreement is unambiguous. Specifically, the plaintiff claims that the Appellate Court improperly relied upon a narrow, legal definition of the term "professional" when construing the language of the agreement and failed to consider broader, common dictionary definitions of the term. In response, the defendants contend that the Appellate Court properly affirmed the judgment of the trial court and properly concluded that the term "professional offices," as used in the agreement, is clear and unambiguous and is limited to the offices of individuals "whose occupation requires a high level of training and proficiency." *NPC Offices, LLC* v. *Kowaleski*, supra, 152 Conn. App. 452. We agree with the plaintiff.

As a preliminary matter, we set forth the applicable standard of review and guiding legal principles. This appeal requires us to determine the meaning of the term

"professional offices" in the agreement. "In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . Thus, if the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." (Citation omitted; internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 510–11, 757 A.2d 1103 (2000). Furthermore, "[t]he language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. . . . Any ambiguity in the instrument creating an easement, in a case of reasonable doubt, will be construed in favor of the grantee." (Citation omitted; internal quotation marks omitted.) *Lago* v. *Guerrette*, 219 Conn. 262, 268, 592 A.2d 939 (1991).

"Although in most contexts the issue of intent is a factual question on which our scope of review is limited . . . the determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Nevertheless, [t]he determination of the scope of an easement is a question of fact . . . [and] is for the trier of fact whose decision may not be overturned unless it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Deane* v. *Kahn*, 317 Conn. 157, 166, 116 A.3d 259 (2015). In the present case, the trial court's determination of the intent of the original parties to the agreement was based solely on the language of the agreement and did not involve a review of the trial court's resolution of any evidentiary issues of credibility. Accordingly, to the extent that we are interpreting the express terms of the agreement, our review of the Appellate Court's construction of the agreement is plenary.

Finally, we note that "[t]he general principle that servitudes should be interpreted in favor of validity, in contrast to the old rule that favored construction in favor of free use of land, facilitates safeguarding the public interest in maintaining the social utility of land while minimizing legal disruption of private transactions. A similar role is played by the rule that where two or more reasonable interpretations of a servitude are possible, the one more consonant with public policy is to be preferred." 1 Restatement (Third), Property,

Servitudes § 4.1, comment (a), p. 498 (2000).

With these principles in mind, we begin our analysis with the language of the agreement. The agreement provides in relevant part that "in the event that [192 South Main Street] shall be used *for purposes other than residential or professional offices*, the Second Parties' right to use the said driveway shall terminate." (Emphasis added.)

Resolution of the plaintiff's claim depends on whether the term "professional offices," as used in the agreement, encompasses the previous tenants of the plaintiff's property, including a mortgage brokerage, a home health-care agency, and an appliance delivery coordination service.[2] In the present case, the agreement does not define the term "professional offices" and the parties provided no evidence at trial to suggest that the term "professional" was intended to have "any special or unusual connotation . . . ." *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 777, 687 A.2d 1270 (1997). Thus, we must consider the ordinary meaning of the term.

"We often consult dictionaries in interpreting contracts . . . to determine whether the ordinary meanings of the words used therein are plain and unambiguous, or conversely, have varying definitions in common parlance." (Internal quotation marks omitted.) *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 193, 112 A.3d 144 (2015). The Appellate Court adopted the definition of "professional" in Black's Law Dictionary, which provides as follows: " '[A] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency.' " *NPC Offices, LLC* v. *Kowaleski*, supra, 152 Conn. App. 452, quoting Black's Law Dictionary (9th Ed. 2009). We are also aware, however, that numerous common dictionaries also contain a broader definition of the term.[3] Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) defines "professional" as, inter alia, "of, relating to, or characteristic of a profession" and "profession" as, inter alia, "a principal calling, vocation, or employment . . . ." The American Heritage Dictionary of the English Language (5th Ed. 2011) similarly defines "professional" as, inter alia, "[o]f, relating to, engaged in, or suitable for a profession" and "profession" as, inter alia, "[a]n occupation or career . . . ." Webster's Third New International Dictionary (2002) defines "professional" as, inter alia, "one that engages in a particular pursuit, study, or science for gain or livelihood . . . ."

It is well established that "[i]f the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Murtha* v. *Hartford*, 303 Conn. 1, 9, 35 A.3d 177 (2011). The fact that these dictionaries contain both the narrow definition adopted

by the Appellate Court and the aforementioned, broad definition indicates that both parties' interpretations of the term are reasonable. Therefore, on the basis of our review of the entire agreement and various dictionary definitions, we conclude that the term "professional offices" in the agreement is ambiguous. The trial court and the Appellate Court, however, ignored the broader definitions provided in common dictionaries and improperly concluded that the term "professional offices," as used in the agreement, was plain and unambiguous. See *NPC Offices, LLC* v. *Kowaleski*, supra, 152 Conn. App. 452.

It is undisputed that there was no evidence presented at trial as to the circumstances surrounding the creation of the agreement and, thus, evidence of the original parties' intent regarding the term "professional offices." Therefore, we must construe the ambiguous language of the agreement in favor of the plaintiff, as the grantee of the easement. See *Lago* v. *Guerrette*, supra, 219 Conn. 268 ("[a]ny ambiguity in the instrument creating an easement, in a case of reasonable doubt, will be construed in favor of the grantee" [internal quotation marks omitted]). This conclusion is fortified by the application of the principle "that servitudes should be interpreted in favor of validity . . . ."[4] 1 Restatement (Third), supra, § 4.1, comment (a), p. 498. Therefore, we apply the broader definition of the term "professional" and conclude that the term "professional offices," as used in the agreement, means an office where one "engages in a particular pursuit, study, or science for gain or livelihood . . . ." Webster's Third New International Dictionary (2002). Using this definition of "professional" indicates that, contrary to the Appellate Court's conclusion, the agreement does not preclude offices of the type that had been previously operated out of the plaintiff's property, namely that of a mortgage broker, a home health-care agency, and an appliance delivery coordination service. See *NPC Offices, LLC* v. *Kowaleski*, supra, 152 Conn. App. 453.

The defendants contend, however, that the application of the broader dictionary definition would render the term "professional" in the agreement meaningless.[5] Specifically, the defendants assert that our interpretation would violate the rule of construction that " 'militates against interpreting a contract in a way that renders a provision superfluous.' " *Awdziewicz* v. *Meriden*, 317 Conn. 122, 130, 115 A.3d 1084 (2015). We reject this claim for two reasons. First, we note that, contrary to the defendants' claim, our interpretation gives effect to all provisions of the agreement as we are construing the term "professional offices" as a whole. Second, the definition of "professional" that we conclude applies to the interpretation of the agreement in the present case does not include all offices, but rather is limited to offices where one engages in a pursuit "for gain or livelihood" as opposed to merely in pursuit of one's

interests. Webster's Third New International Dictionary (2002). For example, the office of a local youth program or a similar organization would not qualify as a "professional office" under our interpretation of the agreement. Therefore, our interpretation does not render any term of the agreement in the present case meaningless.

Pursuant to Practice Book § 84-11, the defendants also filed a statement of alternative grounds for affirmance of the Appellate Court's judgment and of adverse rulings to be considered in the event of a new trial. In that statement, the defendants raised as alternative grounds for affirmance that the doctrines of judicial estoppel and induced error are applicable to the present case and that the plaintiff's use of its property to house multiple simultaneous businesses constituted use for "purposes other than residential or professional offices" in violation of the agreement.[6] Practice Book § 84-11 (a) provides in relevant part: "[T]he appellee may present for review alternative grounds upon which the judgment may be affirmed *provided those grounds were raised and briefed in the appellate court. . . .*" (Emphasis added.) Our review of the Appellate Court record reveals that the defendants did not raise these grounds for affirming the judgment of the trial court in the Appellate Court. Thus, because the plaintiff would be prejudiced by our review of these issues, we decline to consider these issues in the present appeal.[7]

Furthermore, the defendants claim that the judgment of the Appellate Court could be affirmed on the alternative ground that the plaintiff's use of its rear parking lot for, inter alia, a "log-cutting operation" and the storage of boats and trailers constituted use for "purposes other than residential or professional offices" in violation of the agreement. We decline to review this claim because we conclude that it does not constitute an alternative ground for affirmance. The question of whether the plaintiff's performance of the aforementioned activities in its rear parking lot constitutes use for "purposes other than residential or professional offices" requires additional factual findings by the trial court, including a determination of whether the property was being used for residential purposes. Therefore, the judgment of the Appellate Court is reversed.

Reversing the judgment of the Appellate Court as to whether these prior tenancies of the plaintiff's property constituted "professional offices" within the meaning of the agreement does not dispose of all the claims relating to the agreement and the parties' respective properties. As a result of the trial court's determination that the easement had terminated, there are several claims that the trial court did not independently address. Accordingly, we now turn to the issues that the trial court must consider on remand in light of the conclusion that we have reached.[8]

We conclude that the trial court must address the

following issues on remand. First, because the trial court determined that the easement had been terminated, it solely addressed the plaintiff's claims of fraudulent transfer, prescriptive easement, and implied easement. The trial court did not address the plaintiff's claims of quiet title, injunctive relief, and entry and detainer. Accordingly, on remand, the trial court must address these claims. Second, for the same reason, we conclude that the defendants will have the opportunity on remand to establish their counterclaims of overburdening the easement and breach of contract. Third, the defendants will also have the opportunity to establish their special defenses that the plaintiff breached other provisions of the agreement not at issue in this appeal and that the plaintiff's claims were barred by the doctrines of waiver and of unclean hands. Fourth, the defendants will have the opportunity on remand to establish their quiet title counterclaim and breach of contract special defense regarding the issue of whether the plaintiff's property had been used for "purposes other than residential or professional offices" to the extent that they relate to the question of whether the plaintiff violated the terms of the agreement by engaging in the aforementioned activities in its rear parking lot. Fifth, the plaintiff will have the opportunity to establish the special defenses that it had asserted in response to the defendants' counterclaims, namely that the defendants' counterclaims were barred by the doctrines of bad faith, unclean hands, collateral estoppel, and breach of contract. Finally, we note that, because the trial court did not fully determine the boundaries of the easement due to its conclusion that the easement had terminated, on remand, the trial court must make a determination regarding all of the dimensions of the easement.[9]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court for a new trial in accordance with this opinion.

In this opinion the other justices concurred.

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issues: "1. Did the Appellate Court properly affirm the trial court's decision based upon its conclusion that the doctrine of disproportionate forfeiture does not apply in this matter? [and] 2. Did the Appellate Court properly affirm the trial court's decision based upon its conclusion that the premises had been used for purposes other than 'professional offices?' " *NPC Offices, LLC* v. *Kowaleski*, 314 Conn. 936, 936–37, 102 A.3d 1115 (2014). Because we conclude that the Appellate Court improperly determined that the premises had been used for purposes other than "professional offices," we do not reach the first certified question.

[2] The trial court found, and the parties agree, that a mortgage brokerage, a home health-care agency, and an appliance delivery coordination service had been operated out of the plaintiff's property. Furthermore, it is undisputed that Aronson's current operation of a psychologist's office at the property qualifies as a "professional office."

[3] Although we have previously relied on Black's Law Dictionary in the past in order to ascertain the "common, natural, and ordinary meaning and usage" of a term; (internal quotation marks omitted) *Remillard* v. *Remillard*, 297 Conn. 345, 355–56, 999 A.2d 713 (2010); we note that it is often not the best source for determining the ordinary use of a term.

[4] We also recognize the rule of construction that provides that an ambiguity is construed against the party that drafted the instrument. See *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, 300 Conn. 254, 260, 14 A.3d 284 (2011); 1 Restatement (Third), supra, § 4.1, comment (d), p. 500. Although there was some testimony at trial suggesting who the drafter of the agreement may have been, the trial court made no finding concerning this issue. Thus, we do not apply this principle of construction in the present case.

[5] The defendants make a number of nonmeritorious contentions that we reject. First, the defendants contend that this court should decline review of the plaintiff's claim because the plaintiff failed to adequately preserve its claim for appeal. Specifically, the defendants contend that the plaintiff did not advocate for the application of a broad definition of the term "professional offices" before the trial court. We disagree with the defendants. The trial court ordered the parties to file posttrial briefs on the question of the meaning of the term "professional" and subsequently held in favor of the defendants based upon its conclusion that the previous tenants of the plaintiff's property did not fall within the scope of the term "professional offices." The plaintiff advanced a broad definition of the term in its posttrial reply brief, asserting that the term "professional offices" in the agreement could reasonably be interpreted as a means of prohibiting the use of the property to house retail or manufacturing offices. The Appellate Court affirmed the judgment of the trial court on the basis of its conclusion that the plaintiff's property had been used for purposes other than "professional offices." See *NPC Offices, LLC* v. *Kowaleski*, supra, 152 Conn. App. 452. Thus, because the issue of the meaning of the term "professional offices" was clearly at issue before both the trial court and the Appellate Court, we conclude that the present case does not present a situation that "would amount to trial by ambuscade." *State* v. *Santana*, 313 Conn. 461, 467, 97 A.3d 963 (2014); see also id. (noting that "this court has expressed a willingness to review claims that a party did not explicitly raise to the trial court if it is clear from the record that the substance of the claim was raised").

Furthermore, the defendants represent in their brief to this court that the testimony of the plaintiff's expert in real estate law supports their understanding of the term "professional offices." Our review of the record, however, indicates that the trial court ruled that the plaintiff's expert was not qualified to give an opinion as to the definition of the term "professional offices." Therefore, we do not consider this testimony.

Second, the defendants cite to *Dlugos* v. *Zoning Board of Appeals*, 36 Conn. Supp. 217, 219, 416 A.2d 180 (1980), which the trial court also relied on, and several out-of-state cases in support of their claim that the Appellate Court properly adopted a narrow definition of the term "professional." See *NPC Offices, LLC* v. *Kowaleski*, supra, 152 Conn. App. 452. We do not find these cases, which involved the interpretation of the term "professional" in certain zoning ordinances and statutes of limitations for professional malpractice actions, to be persuasive in the context of interpreting the agreement between the parties in the present case.

Third, the defendants contend that the interpretation of the term "professional" as used in the context of zoning ordinances is especially instructive in the present case because it would be logical for this court to infer that the original parties to the agreement intended to attach the same significance to the language in their agreement. Specifically, at oral argument before this court, counsel for the defendants contended that the fact that the plaintiff's property was located in a residential zone at the time the agreement was drafted indicates that the original parties' intention was to permit "limited professional use" of the property. The defendants never introduced evidence at trial regarding the zoning ordinances in effect at the time the agreement was drafted and the trial court made no finding on this issue. If the defendants wished to rely on the definition of "professional" in the context of zoning ordinances, the defendants should have provided evidence at trial that the agreement was drafted in accordance with the zoning ordinances in effect in 1960. Indeed, in their posttrial brief, the defendants acknowledged the fact that they solely provided these zoning cases in response to the trial court's order that the parties discuss cases defining the term "professional."

Furthermore, we note that the original parties to the agreement did not include language restricting the definition of the term "professional offices" or references to the zoning ordinances in effect at the time in the agreement. Thus, the interpretation of the agreement that the defendants advance would require us to add the term "limited" as a restrictive modifier of the term "professional offices," which is something we cannot do. See *Stratford* v. *Winterbottom*, 151 Conn. App. 60, 73, 95 A.3d 538 ("[i]n interpreting a contract courts cannot add new or different terms" [internal quotation marks omitted]), cert. denied, 314 Conn. 911, 100 A.3d 403 (2014). Accordingly, we reject the defendants' claim.

[6] In their Practice Book § 84-11 statement, the defendants further asserted that the judgment of the Appellate Court could be affirmed on the alternative

ground that the issue the plaintiff has raised on appeal was not properly preserved for review. We have previously addressed this issue in this opinion. See footnote 5 of this opinion.

[7] We further note that the defendants failed to move for special permission to raise these alternative grounds. See Practice Book § 84-11 (a) ("If such alternative grounds for affirmation or adverse rulings or decisions to be considered in the event of a new trial were not raised in the appellate court, the party seeking to raise them in the supreme court must move for special permission to do so prior to the filing of that party's brief. Such permission will be granted only in exceptional cases where the interests of justice so require.").

[8] In compliance with Practice Book § 84-11, the defendants further present an adverse ruling of the trial court for our consideration. Specifically, the defendants assert that the trial court improperly determined that the plaintiff's use of its rear parking lot for the aforementioned activities did not constitute an unreasonable use of the defendants' driveway. We understand the defendants' claim regarding the adverse ruling to be a part of the defendants' counterclaims for trespass and private nuisance. Thus, we conclude that the filing of a statement pursuant to § 84-11 is not the proper means to raise these claims in view of the fact that the Appellate Court concluded that these claims "if successful would entitle [the defendants] only to nominal damages." *NPC Offices*, *LLC* v. *Kowaleski*, supra, 152 Conn. App. 458. If the defendants wished to contest these issues, they should have filed a cross petition for certification to appeal.

[9] We note that the defendants raised this issue in their Appellate Court brief and again in their Practice Book § 84-11 statement to this court.